JOSHUA M. MASUR (SBN 203510)
  *jmasur@zuberlawler.com*
**ZUBER LAWLER LLP**
2000 Broadway Street, Suite 154
Redwood City, California 94063   USA
Telephone: +1 (213) 596-5620
Facsimile: +1 (213) 596-5621

BRIAN J. BECK (*pro hac vice* to be filed)
  *bbeck@zuberlawler.com*
**ZUBER LAWLER LLP**
111 West Jackson Street, Suite 1700
Chicago, Illinois 60604   USA
Telephone: +1 (213) 596-5620
Facsimile: +1 (213) 596-5621

Attorneys for Plaintiffs
REARDEN LLC and REARDEN MOVA LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| REARDEN LLC, a California limited liability company, and REARDEN MOVA LLC, a California limited liability company, | Case No. |
| | **COMPLAINT FOR COPYRIGHT AND PATENT INFRINGEMENT** |
| *Plaintiffs,* | |
| *v.* | **DEMAND FOR JURY TRIAL** |
| TWDC ENTERPRISES 18 CORP. f/k/a THE WALT DISNEY COMPANY, a Delaware corporation, DISNEY CONTENT SERVICES CO., INC. d/b/a DISNEY PICTURES PRODUCTIONS, LLC, a California Corporation, WALT DISNEY PICTURES, a California corporation, MARVEL STUDIOS, LLC, a Delaware limited liability company, MVL FILM FINANCE LLC, a Delaware limited liability company, LUCASFILM, LTD, LLC, a California limited liability company, and DOES 1-10, | |
| *Defendants.* | |

1   Plaintiffs Rearden LLC and Rearden Mova LLC (collectively "Plaintiffs"), through their

2   attorneys and for their claims against defendants TWDC Enterprises 18 Corp. f/k/a The Walt

3   Disney Company, Disney Content Services Co., Inc. d/b/a Disney Pictures Production, LLC, Walt

4   Disney Pictures, Marvel Studios, LLC, MVL Film Finance LLC (collectively "Disney"),

5   Lucasfilm Ltd., LLC ("Lucasfilm"), and John Does 1-10 (collectively "Defendants"), allege as

6   follows. Marvel Studios, LLC, MVL Film Finance LLC, and their subsidiaries are referred to

7   collectively as "Marvel" herein.

8                              **INTRODUCTION**

9   1.   On information and belief, Disney's *Avengers: Infinity War* (released on April 27,

10  2018) and *Avengers: Endgame* (released on April 26, 2019) are two of the highest grossing

11  movies of all time, each making over $2 billion in worldwide box office receipts alone, not

12  counting revenue from home video sales and streaming services. They are each in the top 5

13  highest grossing movies of all time and they are the highest grossing two-part series of all time.

14  2.   These two movies are centered on a CG (computer graphics) villain, Thanos,

15  played by Josh Brolin, whose character is animated using innovative facial capture technology that

16  was required to translate Brolin's expressive performance into Thanos's appearance in the film.

17  3.   Disney and its contractor, Digital Domain 3.0 ("DD3"), claimed in numerous

18  publications that they used Disney's own facial capture technology, the "MEDUSA Performance

19  Capture System," to create Thanos. *See, e.g.,* https://studios.disneyresearch.com/medusa-

20  performance-capture-system/.

21  4.   As this Court has previously determined, "Rearden, and not … DD3, owns and at

22  all relevant times has owned the MOVA Assets." *Shenzhenshi Haitiecheng Science and*

23  *Technology Co., Ltd. v. Rearden LLC et al*, Case No. 4:15-cv-797 (the "Ownership Litigation"),

24  ECF 427, at 15 (Aug. 11, 2017).  As a result, Rearden was given the right to "take possession of

25  the Mova Assets forthwith."  *Id.* at 18.  Even before that final determination, DD3 had been

26  preliminarily enjoined from "using, moving, concealing, transferring or otherwise disposing of

27  any MOVA Asset" by this Court as of June 17, 2016.  4:15-cv-797, ECF 188, at 15, 16 (Jun. 17,

28  2016).

5.      Notwithstanding that the Court entered judgment in the Ownership Litigation nearly four years ago, "[t]he Court retains jurisdiction to enforce its Orders regarding the return of the MOVA Assets to Rearden." Case No. 4:15-cv-797, ECF 493, at 2 (Aug. 28, 2018). Of particular relevance here, the MOVA Assets that the Court has ordered that DD3 and other entities return to Rearden includes not just the "MOVA Hardware [and] Software," but also "MOVA Business Records." Case No. 4:15-cv-797, ECF 449, at 2 (Oct. 2, 2017). The Court appointed a Special Master to supervise "the identification, preservation, and return to Rearden of any and all MOVA Assets in the possession of … DD3," including authorizing the Special Master to "oversee any forensic analysis of DD3's computer systems and services." Case No. 4:15-cv-797, ECF 529, at 1-2 (Jun. 17, 2019). The Special Master, in turn, appointed DisputeSoft as a forensic expert to assist that effort. Case No. 4:15-cv-797, ECF 534 (Aug. 20, 2019).

6.      Documents recently identified and returned to Plaintiffs by DisputeSoft and the Special Master – documents, again, that this Court had determined were, in fact, the property of Rearden – indicate that Disney and DD3 lied to the public about having used Disney's MEDUSA system to create Thanos. To the contrary, those documents indicate that all or part of the work to animate Thanos was in fact performed using Plaintiffs' MOVA Contour facial capture system and software after DD3 had been enjoined from so doing, and after Disney had actual notice of Rearden's rights to MOVA. *See, e.g.*, *Rearden LLC et al v. The Walt Disney Company et al*, Case No. 4:17-cv-4006, ECF 1 (Jul. 17, 2017).

7.      Separately, on information and belief, on or about November 12, 2019, Disney launched its home streaming service, Disney+, to great acclaim and commercial success. According to Disney's February 9, 2022 quarterly earnings report, Disney+ had 42.9 million paid domestic subscribers at an average monthly revenue of $6.68 per subscriber as of January 1, 2022, for monthly revenue of about $287 million and annual revenue of about $3.44 billion.

8.      Disney+ streams numerous movies that Disney advertises were made using Disney's MEDUSA Performance Capture System, including almost every recent Marvel and Star Wars movie. Films listed on Disney Research Studios' website that were made with Medusa and that have streamed on Disney+ include the "Star Wars" series films *Star Wars: The Force*

3

*Awakens*, *Star Wars: The Last Jedi*, *Star Wars: The Rise of Skywalker*, *Rogue One: A Star Wars Story*, *Solo: A Star Wars Story*; the Marvel films *Doctor Strange*, *Spiderman: Homecoming*, *Thor: Ragnarok*; *Ant-Man and the Wasp*, *Avengers: Infinity War, Avengers: Endgame*, and *Eternals*; and other Disney films including *Maleficent*, *The Jungle Book*, *Pirates of the Caribbean: Dead Men Tell No Tales*, *Aladdin*, *Maleficient: Mistress of Evil*, and *Jungle Cruise.*

9.      Lucasfilm division Industrial Light & Magic ("ILM") claims to be, together with Disney Research Studios, the "exclusive provider of MEDUSA capture technology." *See* https://www.ilm.com/facial-capture/.

10.     Defendants also advertise their use of a system called the "Anyma Performance Capture System" ("ANYMA"), which is used to allow for facial performance capture with fewer constraints on the actor by building an underlying model from a small number of MEDUSA reconstructions. Films listed on Disney Research Studios' website that were made with ANYMA and that have streamed on Disney+ include *Avengers: Endgame*, *Aladdin*, and *Maleficient: Mistress of Evil*. Disney Research Studios' website lists additional films streamed on services other than Disney+ produced with ANYMA including *Terminator: Dark Fate*, *Space Jam: A New Legacy*, and *No Time to Die*.

11.     As set forth below, the making and streaming of movies (or any other form of visual media) made using Disney's MEDUSA capture technology has infringed, and continues to infringe, at least one claim of each of Plaintiff Rearden Mova's U.S. Patents Nos. 10,825,226 ("the '226 patent"), 11,004,248 ("the '248 patent"), 11,024,072 ("the '072 patent"), and 11,030,790 ("the '790 patent") (collectively "the Rearden Patents").

12.     Where Defendants used the stolen MOVA Contour technology to create movies, they have infringed Plaintiffs' copyright in the MOVA Contour software. Regardless of whether Defendants used the stolen MOVA Contour technology or their own MEDUSA capture technology to create the many films that are streamed on Disney+, they are infringing the Rearden Patents. Plaintiffs therefore seek all just and equitable copyright and patent remedies on behalf of the authors, inventors, and owners of the Contour program, systems, and methods: namely, Plaintiffs Rearden and Rearden Mova.

1

## THE PARTIES

2    13.   Plaintiff Rearden LLC ("Rearden") is a California limited liability company having

3 its principal place of business at 211 South Whisman Road, Suite D, Mountain View, CA 94041.

4    14.   Plaintiff Rearden Mova LLC ("Rearden Mova") is a California limited liability

5 company having its principal place of business at 211 South Whisman Road, Suite D, Mountain

6 View, CA 94041. Rearden Mova is wholly owned by Rearden.

7    15.   On information and belief, Defendant TWDC Enterprises 18 Corp. f/k/a The Walt

8 Disney Company ("Disney Company") is a Delaware corporation having its principal place of

9 business at 500 S. Buena Vista Street, Burbank, California 91521.

10    16.   On information and belief, Defendant Disney Content Services Co., Inc. d/b/a

11 Disney Pictures Production, LLC ("Disney Content") is a California corporation having its

12 principal place of business at 500 S. Buena Vista Street, Burbank, California 91521. Disney

13 Content is a wholly-owned subsidiary of defendant Disney Company.

14    17.   On information and belief, Defendant Walt Disney Pictures ("Disney Pictures"), is

15 a California corporation having its principal place of business at 500 S. Buena Vista Street,

16 Burbank, California 91521. Disney Pictures is a wholly-owned subsidiary of defendant Disney

17 Company.

18    18.   On information and belief, Defendant Marvel Studios, LLC ("Marvel Company"),

19 is a Delaware limited liability company having its principal place of business at 500 S. Buena

20 Vista Street, Burbank, California 91521. Marvel Company is a wholly-owned subsidiary of

21 defendant Disney Company.

22    19.   On information and belief, Defendant MVL Film Finance LLC ("MVL"), is a

23 Delaware limited liability company having its principal place of business at 500 S. Buena Vista

24 Street, Burbank, California 91521. MVL is a wholly-owned subsidiary of defendant Disney

25 Company.

26    20.   On information and belief, Defendant Lucasfilm Ltd., LLC ("Lucasfilm"), is a

27 California limited liability company having its principal place of business at One Letterman Drive,

28

COMPLAINT FOR COPYRIGHT AND PATENT INFRINGEMENT

1  Bldg. B, San Francisco, California 94129. Lucasfilm is a wholly-owned subsidiary of defendant

2  Disney Company.

3       21.     On information and belief, Defendants sued herein as DOES 1 through 10,

4  inclusive, are unknown to Plaintiffs who therefore use such fictitious designations. Plaintiffs will

5  seek leave of the Court to insert their true names and capacities when ascertained. Plaintiffs are

6  informed and believe that each of the fictitiously designated Defendants is liable for infringement

7  in the same fashion as the identified Defendants.

8  **JURISDICTION AND VENUE**

9       22.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question

10  jurisdiction), and § 1338 (patent and copyright jurisdiction).

11       23.     This Court has personal jurisdiction over all defendants. It has general personal

12  jurisdiction over Disney Content, Disney Pictures, and Lucasfilm because they are corporations

13  organized and existing under the laws of the State of California. It has general personal

14  jurisdiction over Disney Company, Marvel Company, and MVL because their principal places of

15  business are in the State of California and they have the capacity to sue and be sued in the State of

16  California. And this Court has specific personal jurisdiction over all defendants because they have

17  committed acts in the State of California, including in this District, that give rise to all acts of

18  infringement asserted herein.

19       24.     Venue is proper for Plaintiffs' copyright infringement claims under 28 U.S.C. §

20  1400(a) and 1391(b), (c) and (d). Disney Content, Disney Pictures, Marvel Company, and MVL

21  reproduced, distributed, and authorized the performance and display of *Avengers: Infinity War* and

22  *Avengers: Endgame* throughout this judicial district. All other defendants are residents of the State

23  of California and subject to personal jurisdiction in this judicial district.

24       25.     Venue is proper for Plaintiff's patent infringement claims against Defendant

25  Lucasfilm under 28 U.S.C. § 1400(b) because it resides in this District. Venue is proper for

26  Plaintiff's patent infringement claims against both Defendants Lucasfilm and Disney Company

27  under 28 U.S.C. § 1400(b) because both defendants have committed acts of infringement in this

28

6

1  District and, on information and belief, have regular and established places of business in this

2  District.

3  **FACTUAL ALLEGATIONS**

4  **I.    The MOVA Contour Technology and Patents**

5      26.    The technology at the core of this case includes Contour Reality Capture

6  ("Contour") technology that was conceived, developed, and authored by plaintiff Rearden and is

7  currently owned by plaintiff Rearden Mova.

8      27.    Contour (http://www.rearden.com/mova.html) is one of many technologies

9  incubated and offered by Rearden (www.rearden.com), a San Francisco Bay Area company

10  founded in 1999 by Steve Perlman as an incubator for fundamental technology, creative works,

11  and their interplay.

12      28.    The Contour program is used to capture high-resolution 3D models of a

13  performer's face and facial movements as the performer's skin moves from frame-to-frame. The

14  primary application for these 3D models is to use the movements of a performer's face to create an

15  animation of a different face with the same movements, whether the different face is that of

16  another actor (as was used in *Harry Potter and the Deathly Hallows, Part I*), a fictional character

17  (as was used to create the "Hulk" in *The Avengers*), or a younger or older version of the same

18  performer (as was used to create an 87-year-old version of Brad Pitt in *The Curious Case of*

19  *Benjamin Button* or a 28-year-younger version of Jeff Bridges in *Tron: Legacy*).

20      29.    The Contour program includes a security mechanism that automatically affixes

21  notice of Rearden's Contour program copyright to its output works. This notice serves as express

22  notification that Rearden LLC is asserting its copyright in the Contour program.

23      30.    The Contour program is protected by a portfolio of patents owned by Rearden LLC

24  and/or Rearden Mova LLC, many of which (including the Rearden Patents asserted in this lawsuit)

25  claim priority to U.S. Patent Application No. 11/255,854 ("the '854 application"), which claims

26  priority to U.S. Provisional Patent Application 60/724,565, which was filed on October 7, 2005.

27  The '854 application issued on February 25, 2014 as U.S. Patent No. 8,659,668 ("the '668

28  patent").

COMPLAINT FOR COPYRIGHT AND PATENT INFRINGEMENT

31.     Plaintiff Rearden Mova owns all rights, title, and interest in, and has standing to sue for infringement of the '226 patent, entitled "Apparatus and Method for Performing Motion Capture Using a Random Pattern on Capture Subjects," which issued on November 3, 2020, and claims priority to the '854 application. A true and correct copy of the '226 patent is attached as Exhibit A.

32.     Plaintiff Rearden Mova owns all rights, title, and interest in, and has standing to sue for infringement of the '248 patent, entitled "Apparatus and Method for Performing Motion Capture Using a Random Pattern on Capture Subjects," which issued on May 11, 2021, and claims priority to the '854 application. A true and correct copy of the '248 patent is attached as Exhibit B.

33.     Plaintiff Rearden Mova owns all rights, title, and interest in, and has standing to sue for infringement of the '072 patent, entitled "Apparatus and Method for Performing Motion Capture Using a Random Pattern on Capture Subjects," which issued on June 1, 2021, and claims priority to the '854 application. A true and correct copy of the '072 patent is attached as Exhibit C.

34.     Plaintiff Rearden Mova owns all rights, title, and interest in, and has standing to sue for infringement of the '790 patent, entitled "Apparatus and Method for Performing Motion Capture Using a Random Pattern on Capture Subjects," which issued on June 8, 2021, and claims priority to the '854 application. A true and correct copy of the '790 patent is attached as Exhibit D.

35.     The Contour technology was introduced at the Special Interest Group on Computer Graphics and Interactive Techniques ("SIGGRAPH") Conference on July 31, 2006 to wide acclaim, including photographs of Contour's systems and methods on the front page of the *New York Times*, page B1 of the *Wall Street Journal*, and *The Hollywood Reporter*, among other publications.

36.     Between the public announcement of Contour at the 2006 SIGGRAPH Conference and 2012, Contour was used with Plaintiffs' authorization to create numerous movies, including *The Curious Case of Benjamin Button* (2008), *TRON: Legacy* (2010), *Harry Potter and the Deathly Hallows, Part I* (2010), *Pirates of the Caribbean: On Stranger Tides* (2011), *John Carter* (2012), and *The Avengers* (2012).

**II.     DD3's Theft of, and Defendants' Unauthorized Use of, the Contour Software.**

37.     As set forth in Plaintiffs' previous amended complaint against Disney that was filed before the release of either *Avengers: Infinity War* or *Avengers: Endgame*, in October 2012, a rogue Rearden employee, Greg LaSalle, stole Plaintiffs' proprietary Contour software, brought it to DD3, and DD3 contracted with Disney to provide facial capture services using the stolen Contour software for the Disney movies *Beauty and the Beast*, *Guardians of the Galaxy*, and *Avengers: Age of Ultron*. *See Rearden LLC et al v. Walt Disney Co. et al*, No. 3:17-cv-04006-JST, Dkt. No. 63 (First Amended Complaint) at ¶¶ 84-124 (N.D. Cal. Mar. 6, 2018) (the "First Disney Litigation").

38.     In the separate Ownership Litigation, *Shenzhenshi Haitiecheng Science & Technology Co., Ltd. v. Rearden LLC et al*, Plaintiff Rearden LLC obtained a preliminary injunction against DD3's parent company on June 17, 2016, prohibiting DD3 from continuing to use its stolen MOVA Contour technology to provide services. Case No. 3:15-cv-797-JST, Dkt. No. 188 (N.D. Cal. June 17, 2016).

39.     Plaintiffs accordingly believed, until recently, that DD3 had complied with the injunction, and that DD3's use of Contour to make films for Defendants had ceased.

40.     In a set of documents identified and returned to Plaintiffs by DisputeSoft and the Special Master in connection with the Ownership Litigation in or around December 2021 (the "DD3 Documents"), Plaintiffs discovered Contour output data files at times corresponding with the production of *Avengers: Infinity War* and *Avengers: Endgame*.

41.     The DD3 Documents also revealed Contour capture files taken from Josh Brolin, the actor who played Thanos in *Avengers: Infinity War* and *Avengers: Endgame*, as well as files created by the rogue Rearden employee who stole the Contour assets for DD3, created and subsequently modified at times corresponding with the production of *Avengers: Infinity War* and *Avengers: Endgame*.

COMPLAINT FOR COPYRIGHT AND PATENT INFRINGEMENT

42.     The top images below show Josh Brolin performing as Thanos with a Head Mounted Camera ("HMC") and the resulting fully rendered face of Thanos:

Head Mounted Camera ("HMC") capture of Josh Brolin for "Thanos" in *Avengers: Infinity War/Endgame*



HMC test capture of Greg LaSalle for *Avengers: Infinity War/Endgame*



The grayscale images to the upper-right show Brolin's performance of four facial expressions and the resulting Thanos face shape, shown from two angles, from each of the four facial expressions. The lower images show Greg LaSalle, the Rearden employee that secretly and wrongfully took the MOVA Assets from Rearden and sold them to DD3 affiliate SHST. The image on the lower-left shows LaSalle performing with an HMC. The grayscale images to the lower-right show LaSalle's performance of four facial expressions and the resulting captured face shape from each of the four facial expressions.

43.     The spreadsheet shown in the image below is a part of a spreadsheet recovered from DD3 and returned to Rearden on or about December 2021 by forensic expert DisputeSoft under the Special Master's supervision:



COMPLAINT FOR COPYRIGHT AND PATENT INFRINGEMENT

3125-1003 / 2126338

The spreadsheet lists files, the last modify date of the files, and the file's filepaths in the directory hierarchy. DD3's internal project name for each file is outlined in red. "BEAST" is the *Beauty and the Beast* project, and "MARY" is the *Avengers Infinity War* and *Avengers: Endgame* project.

44. The BEAST project is shown in the spreadsheet above for comparison because defendant Disney has admitted in prior litigation that it hired DD3's to provide motion capture services using Contour software for actor Dan Steven's facial performance in the "Beast" character in *Beauty and the Beast*, and thus the BEAST files and filepaths are known to have been generated through DD3's unauthorized use of Contour for the BEAST project.

45. The above spreadsheet lines 6785 though 8395 show files and filepaths in which the project is "MARY" (*Avengers: Infinity War* and *Avengers: Endgame*) and as can be seen on line 6785, the actor reference outlined in green is "josh_head", upon information and belief is in reference to actor Josh Brolin, and "mova/data" file (outlined in blue) that was last modified on 3/14/2017—during the time for production of *Avengers: Infinity War*, and after the entry of the June 17, 2016 preliminary injunction. The remaining shown spreadsheet entries show "thanos_head" (outlined in purple), upon information and believe is in reference to the Thanos character, and "mova/data" file (outlined in blue). The last modify dates for the MARY project MOVA range from 3/14/2017 to 12/14/2017, which upon information and belief are dates during the production of *Avengers Infinity War* and *Avengers: Endgame*. Further, these are all dates in which Disney was aware the Preliminary Injunction Order was in force and/or after the Final Decision that ruled Rearden owned the MOVA Assets at all applicable times. Nonetheless, Disney secretly used Contour software during these dates in contempt of the court's orders and rulings.

46. Additionally, the above spreadsheet's listed owner for several of the MARY project MOVA files is "jonberry" (outlined in brown) who, upon information and belief, refers to DD3 employee Jonathan Berry; who, upon information and belief, is credited as the "Facial Performance Capture Artist: Digital Domain 3.0" for the *Beauty and the Beast* movie, and Defendants have admitted that they used MOVA software for that movie. The same Jonathan Berry is credited as "Lead Facial Motion Capture Artist: Digital Domain" for *Avengers: Infinity War*.

47.    The DD3 Documents also indicate that some of the Contour output files used to animate Thanos in *Avengers: Infinity War* and *Avengers: Endgame* included the unauthorized Contour output files previously created for the Thanos character in *Guardians of the Galaxy*, as evidenced in the below spreadsheet. Line 3187 of the below spreadsheet shows a file path name including the name "Full Tilt" (which, on information and belief, is the DD3 internal project name for *Guardians of the Galaxy*), the date 2014-04-23, and "JBrolin":



Upon information and belief, "JBrolin" is a reference to Thanos actor Josh Brolin and 2014-04-23 refers to a date when Josh Brolin's facial performance was captured by the Contour system, including Facial Action Coding System ("FACS") poses. FACS poses can be used with later facial performances. "Vertrax", outlined in blue, is a program that is part of Contour software, evidencing that Contour Vertrax was used with these files. The dates associated with this file range from 7/20/2016 and 2/1/2017, which are years after the release of *Guardians of the Galaxy*, but on information and belief, correspond with production dates for *Avengers: Infinity War* and *Avengers: Endgame*. The dates are also all after the effective date of the Preliminary Injunction Order.

48.    The above spreadsheet also evidences Contour software use with head mounted cameras (HMC) on or about the same time as the Contour Vertrax software. Lines 3183-3186 list "HMC", outlined in red, and "MovaROM", outlined in blue and "Lucio" outlined in brown. Upon information and belief, "HMC" refers to "head mounted camera," "MovaROM" refers to Mova Range of Motion, and Lucio refers to Lucio Moser, DD3 Head of Research and Innovation who

3125-1003 / 2126338

1  was directly involved with developing software in connection with the stolen Contour source code

2  and using Contour software for facial performance capture. The dates of the files correspond with

3  dates of Contour Vertrax software use on line 3187 and are all dates after the Preliminary

4  Injunction Order was in effect, and which, on information and belief, correspond with production

5  dates for *Avengers: Infinity War* and *Avengers: Endgame*.

6       49.    Upon information and belief, DD3 used an internal messaging system called

7  "Diffusion" for exchanging messages among staff. DisputeSoft forensically recovered records

8  from Diffusion that also evidence that Contour software was used in the production of the Thanos

9  head. The spreadsheet below shows message sent about the "thanos_head", outlined in purple, in

10  connection with "mova", outlined in blue, using Diffusion, outlined in yellow, on dates

11  corresponding with *Avengers: Infinity War* and *Avengers: Endgame* production dates, all of which

12  are date after the Preliminary Injunction Order was in effect:



21       50.    On information and belief, Defendants continued to use the unauthorized Contour

22  output files to capture and/or animate Thanos in *Avengers: Infinity War* and in *Avengers:*

23  *Endgame*.

24       51.    Neither Rearden nor Rearden Mova authorized use of the patented Contour systems

25  and methods and copying of the copyrighted Contour program by DD3, Defendant Marvel,

26  Defendant Disney, or any other party for use in *Avengers: Infinity War* or *Avengers: Endgame*.

27       52.    Each time that DD3 operated the Contour system, whether to capture performances

28  or to process the captured performances into 3D output works, the computers made a copy of the

1  Contour program in their CPU's RAM without authorization from Rearden. Disney incorporated

2  the output works of the patented Contour systems and methods and copyrighted Contour program

3  to animate CG characters that were reproduced, distributed, displayed, and performed in

4  *Avengers: Infinity War* and *Avengers: Endgame*.

5  **III.     Defendants' development and use of the MEDUSA and ANYMA Systems.**

6         53.     Defendant Disney's Research Studios division, together with Defendant

7  Lucasfilm's ILM division, advertise a facial capture system they claim to have developed called

8  the "MEDUSA Performance Capture" or "MEDUSA Facial Capture" system. The system is

9  described by Disney as consisting "of a mobile rig of cameras and lights coupled with proprietary

10  software that can reconstruct actor's faces in full motion, without using traditional motion-capture

11  dots." https://studios.disneyresearch.com/medusa/

12         54.     Disney Research Studios' website states that Thanos in *Avengers: Infinity War* was

13  created using a MEDUSA capture of Josh Brolin: "In order to transfer the performance of Brolin

14  onto Thanos, the visual effects studio relied heavily on technology from Disney Research. Brolin

15  was captured using the Medusa Performance Capture System, a Disney proprietary capture

16  technology that can reconstruct the three-dimensional shape of the human face over time at very

17  high resolution. Based on this data, Digital Domain built a digital double of Brolin, which they

18  control using their in-house tool Masquerade. The technology underneath Masquerade is based on

19  a research project by Disney Research Facial Performance Enhancement Using Dynamic Shape

20  Space Analysis, which allows to control a high-quality face model from sparse input data. This

21  allowed to employ traditional marker-based motion capture from helmet cameras but to achieve

22  much higher capture fidelity."

23         55.     In other publications, Disney and Lucasfilm revealed that they used MEDUSA

24  together with the ANYMA system to also create the "Smart Hulk" character portrayed by Mark

25  Ruffalo in *Avengers: Endgame*. The ANYMA system has been described as using a set of facial

26  shapes created from a MEDUSA session with the performer (for *Avengers: Endgame*, Mark

27  Ruffalo) in order to map animation generated from those high-definition shapes onto lower-

28

1  definition head-mounted camera captures allowing the performer to move about the set more

2  freely.

3        56.     On information and belief, Defendants have used and continue to use MEDUSA

4  and ANYMA to create films and television programs including but not limited to *Star Wars: The*

5  *Force Awakens*, *Star Wars: The Last Jedi*, *Star Wars: The Rise of Skywalker*, *Rogue One: A Star*

6  *Wars Story*, *Solo: A Star Wars Story*, *Doctor Strange*, *Spiderman: Homecoming*, *Thor: Ragnarok*;

7  *Ant-Man and the Wasp*, *Avengers: Infinity War, Avengers: Endgame*, *Eternals*, *The Jungle Book*,

8  *Pirates of the Caribbean: Dead Men Tell No Tales*, *Aladdin*, *Maleficient: Mistress of Evil*, *Jungle*

9  *Cruise*, *Ready Player One*, *Space Jam: A New Legacy*, and *No Time to Die.* These movies include

10 many of the highest grossing films of the past five years.

### **FIRST CLAIM FOR RELIEF**

### **Copyright Infringement (17 U.S.C. § 501)**

### **(Against the Disney Defendants )**

14       57.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 56 as

15 though fully set forth herein.

16       58.     The Contour program is an original literary work of authorship by Rearden-

17 employed programmers.

18       59.     The Contour program was fixed in a tangible medium of expression when it was

19 stored in non-volatile computer memory and/or media such as computer hard drives, CD, CD-R,

20 DVD, or Blu-ray disks from which it may be perceived, reproduced, or otherwise communicated

21 for a period of more than transitory duration. Accordingly, the Contour program is a proper

22 subject of copyright protection.

23       60.     Rearden's programmers duly assigned their copyrights in the Contour program to

24 Rearden. At all material times, Plaintiff Rearden Mova was and is the owner of United States

25 Copyright Registration No. TXu001977151 for the Contour program.

26       61.     Each time that DD3 operated the Contour apparatus, whether for facial

27 performance capture or for processing captures into output works, the computers made an

28 unauthorized copy of the Contour program in their central processing units' ("CPU's'") random

1  access memory ("RAM"). Each such copy is a violation of Rearden's exclusive right to authorize

2  copies of its Contour program under 17 U.S.C. § 106 (1), and therefore each copy is an act of

3  direct copyright infringement by DD3.

4          62.    Disney had actual knowledge of DD3's specific acts of infringement at least by

5  virtue of having notice of the Preliminary Injunction Order, and despite that Order continued to

6  induce, cause, and materially contribute to DD3's infringement.

7          63.    Disney, either directly or through entities subject to its direction and control,

8  contracted with DD3 for facial performance capture services and output works using the Contour

9  program for Disney's films *Avengers: Infinity War* and *Avengers: Endgame*. At all material times

10  during DD3's performance of the facial performance capture contract, Disney and Marvel were in

11  a position to police DD3 and/or had the right and ability to supervise and control DD3's

12  performance.

13          64.    Disney, either directly or through entities subject to its direction and control,

14  initiated and scheduled each performance in which facial performance capture was used.

15          65.    For each performance with facial capture (each "Shoot"), Disney, either directly or

16  through entities subject to its direction and control, supplied performers to provide facial

17  performances for capture.

18          66.    For each Shoot, Disney, either directly or through entities subject to its direction

19  and control, supplied a director to control and direct the actions of all parties operating the facial

20  performance capture equipment and/or processing using the Contour program. Acting as Disney's

21  supervising agent, the director controlled and directed the use of the Contour program during

22  and/or after the Shoot by starting and terminating each Shoot, starting and stopping each take

23  using facial performance capture during the Shoot, ordering additional takes, and choosing

24  "Selects" (the facial performance capture takes which were deemed "good takes" by the director)

25  for further program processing to create program output works, using the Contour program. So

26  extensive is Disney's directors' supervision and control over the Shoots, that defendants have

27  contended in other litigation that the directors' contribution "is substantial and performs 'the lion's

28

share of the creativity' in the facial motion capture," and that consequently the directors are the authors of the results of the facial motion capture.

67.    For each Shoot, Disney, either directly or through entities subject to its direction and control, provided various film crew to support and facilitate the facial performance capture and/or processing using the Contour program.

68.    On information and belief, the contract between DD3 and Disney, or entities subject to its direction and control such as Marvel, grants the unrestricted right to cancel "any portion of the Services" provided by DD3, ILM and others offering facial performance capture-related services ("Facial VFX Companies") subject only to the duty to pay for costs and services performed before cancellation. Accordingly, Disney, either directly or through entities subject to its direction and control, were in a position to police all Facial VFX Companies' infringing acts. They had the authority and practical ability to observe and evaluate services provided by Facial VFX Companies and—if defendants deemed those services inadequate, improper, or unlawful— require Facial VFX Companies to remedy the services or cancel Facial VFX Companies' provision of services.

69.    Disney had an obvious and direct financial interest in exploitation of Rearden's copyright in the Contour program to use the Contour output works to animate CG characters in *Avengers: Infinity War* and *Avengers: Endgame*, including at least the Thanos character. Disney believed that Contour facial performance motion capture would make the Thanos CG character more believable and compelling, which would in turn draw a wider audience to the films.

70.    At all material times, Defendant Disney Company dominated and controlled the Disney subsidiary Defendants, including Marvel and Lucasfilm, and had a substantial and continuing connection with them with respect to the infringing acts alleged herein.

71.    Accordingly, Defendants induced each of Facial VFX Companies' direct infringements of Rearden's copyright in the Contour program during its performance of the *Avengers: Infinity War* and *Avengers: Endgame* facial performance capture contracts, and are vicariously liable to Rearden for each of Facial VFX Companies' direct infringements.

72.     Accordingly, Defendants also are contributory infringers of Rearden's copyright in the Contour program during its performance of the *Avengers: Infinity War* and *Avengers: Endgame* facial performance capture contracts, and are liable to Rearden for each of Facial VFX Companies' direct infringements.

### SECOND CLAIM FOR RELIEF

### Infringement of the '226 Patent (35 U.S.C. § 271)

### (Against Defendants Disney Company and Lucasfilm)

73.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 72 as though fully set forth herein.

74.     Defendants Disney Company and Lucasfilm have infringed and continues to infringe, directly and indirectly, literally or under the doctrine of equivalents, the '226 patent, by using, or by making, importing, offering to sell, and/or selling products or processes that are used to, practice one or more inventions claims in the '226 patent, as well as by knowingly, actively and intentionally inducing others to infringe the '226 patent, including but not limited to other streaming video services and customers, and/or by contributing to the infringement of the '226 patent by others, including but not limited to other streaming video services and customers. Such infringing conduct includes, but is not limited to, Defendants' marketing and sale of its Disney+ streaming video service when used to stream movies, television programs, and other media created using the MEDUSA and/or ANYMA facial capture systems.

75.     As an illustrative but nonexclusive example, Defendants' Disney+ streaming video service's communication of movies, television programs, and other media created using the MEDUSA and/or ANYMA facial capture systems infringes, for example, at least claim 1 of the '226 patent. Claim 1 of the '226 patent recites:

Claim 1:

A method comprising:

communicating a digital video stream with at least part of a rendered 3D animated face which includes 3D facial shapes that:

are correlated to a plurality of high resolution 3D facial surface shapes that track the high resolution 3D motion of a performer's face from a first facial performance; and that

1    correspond to similar facial expressions of a performer's face from a second facial
2    performance.

3    76.    On information and belief, Defendant Disney Company operates Disney+, a

4    streaming home video service that is used to communicate numerous movies created with Disney

5    Company and Lucasfilm's MEDUSA and/or ANYMA facial capture systems.

6    77.    Defendant Disney Company's Disney+ service communicates digital video streams

7    with at least part of a rendered 3D animated face (including, for example, "Smart Hulk" in

8    *Avengers: Endgame* and the Genie in *Aladdin*).

9    78.    The rendered 3D animated faces created with MEDUSA and subsequently

10   communicated by Defendant Disney Company through Disney+ include 3D facial shapes. For

11   example, Russel Earl of ILM told one journalist in May 2019: "We did a Medusa session with

12   Ruffalo to get a whole set of facial shapes to drive our facial library for Smart Hulk."

13   https://www.awn.com/vfxworld/ilm-tackles-bruce-banners-smart-hulk-convergence-avengers-

14   endgame. The "facial library for Smart Hulk" is, on information and belief a set of 3D facial

15   shapes included in the Smart Hulk character.

16   79.    The 3D facial shapes included in films created with MEDUSA and streamed on

17   Disney+ are correlated to a plurality of high resolution 3D facial surface shapes that track the high

18   resolution 3D motion of a performer's face from a first facial performance. As the quote from Earl

19   in the previous paragraph explains, the facial library for "Smart Hulk" was created by correlation

20   to high resolution 3D motion of Ruffalo's face from a Medusa facial performance.

21   80.    The 3D facial shapes in the final character animated with MEDUSA and

22   subsequently streamed on Disney+ correspond to similar facial expressions of a performer's face

23   from a second facial performance. For example, an article explaining how the MEDUSA system

24   was used to create the Thanos character in *Avengers: Infinity War* and *Avengers: Endgame*

25   explains that DD3 took frames from a helmet-mounted camera system (the facial expressions of

26   the performer from the second facial performance) and corresponded that capture to the high-

27   resolution facial shapes generated from the MEDUSA scan to create the 3D animated Thanos

28

3125-1003 / 2126338

1  character. *See* https://www.hollywoodreporter.com/behind-screen/how-vfx-teams-brought-josh-
2  brolins-thanos-life-infinity-war-1178231.

3       81.     Because, as set forth above, and in particular, in Paragraphs 75 through 80, as an
4  illustrative but nonexclusive example, the Disney+ service's streaming of media created with the
5  MEDUSA and/or ANYMA facial capture systems practices each and every limitation of at least
6  claim 1 of the '226 patent, the Disney+ service infringes the '226 patent each time it streams
7  media created with the MEDUSA and/or ANYMA facial capture systems.

8       82.     On information and belief, Defendants had actual notice of the '226 patent at least
9  as early as the service of this Complaint.

10      83.     Because, as set forth above, and in particular, in Paragraphs 75 through 80, as an
11  illustrative but nonexclusive example and on information and belief, Defendant Lucasfilm creates
12  3D animated faces using MEDUSA and/or ANYMA to be communicated on Disney+, and on
13  information and belief, Defendant LucasFilm had actual notice and knowledge of the '226 patent,
14  Defendant Lucasfilm provided to Defendant Disney Company a material component of the
15  infringing Disney+ system, and especially made or adapted that material component for use in the
16  infringing Disney+ system.

17      84.     Defendants Disney Company and Lucasfilm also provide films made with
18  MEDUSA or ANYMA to other streaming platforms not controlled by Defendants. For example,
19  *Space Jam: A New Legacy* is available through the streaming service HBO Max, and *No Time to
20  Die* is available for video on demand purchase through YouTube, Amazon Prime Video, and
21  Apple TV+.

22      85.     Because, as set forth above, and in particular, in Paragraphs 75 through 80 and 84,
23  as an illustrative but nonexclusive example and on information and belief, Defendants Lucasfilm
24  and Disney Company create 3D animated faces using MEDUSA and/or ANYMA to be
25  communicated on streaming platforms other than Disney+ (including but not limited to HBO Max,
26  YouTube, Apple TV+, and Amazon Prime Video), and on information and belief, Defendants
27  Disney Company and Lucasfilm had actual notice and knowledge of the '226 patent, Defendants
28  Disney Company and Lucasfilm provided to those other streaming platforms a material

1    component of the infringing streaming systems, and especially made or adapted that material

2    component for use in the infringing streaming systems.

3          86.     Because, as set forth above, and in particular, in Paragraphs 75 through 80 and 84,

4    as an illustrative but nonexclusive example and on information and belief, Defendants Lucasfilm

5    and Disney Company create 3D animated faces using MEDUSA and/or ANYMA to be

6    communicated on streaming platforms other than Disney+ (including but not limited to HBO Max,

7    YouTube, Apple TV, and Amazon Prime Video), and on information and belief, Defendants

8    Disney Company and Lucasfilm had actual notice and knowledge of the '226 patent, Defendants

9    Disney Company and Lucasfilm specifically intended these other streaming platforms to infringe

10   the '226 patent and knew that the other streaming platforms' acts constituted infringement.

11         87.     Defendants' infringement of the '226 patent has been and remains willful and

12   deliberate.

13         88.     Defendants' activities have been without Rearden Mova's authorization.

14         89.     Defendants' have profited through their infringement of the '226 patent.

15         90.     As a result of Defendants' infringement, Rearden Mova has been damaged and will

16   be further damaged, and is entitled to be compensated for such damages pursuant to 35 U.S.C. §

17   284 in an amount that presently cannot be ascertained, but that will be determined at trial.

18   <u>**THIRD CLAIM FOR RELIEF**</u>

19   **Infringement of the '248 Patent (35 U.S.C. § 271)**

20   **(Against Defendants Disney Company and Lucasfilm)**

21         91.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 90 as

22   though fully set forth herein.

23         92.     Defendants Disney Company and Lucasfilm have infringed and continues to

24   infringe, directly and indirectly, literally or under the doctrine of equivalents, the '248 patent, by

25   using, or by making, importing, offering to sell, and/or selling products or processes that are used

26   to, practice one or more inventions claims in the '248 patent, as well as by knowingly, actively

27   and intentionally inducing others to infringe the '248 patent, including but not limited to other

28   streaming video services and customers, and/or by contributing to the infringement of the '248

1  patent by others, including but not limited to other streaming video services and customers. Such

2  infringing conduct includes, but is not limited to, Defendants' production of movies, television

3  programs, and other media using the MEDUSA facial capture systems after the date of issuance of

4  the '248 patent..

5       93.    As an illustrative but nonexclusive example, Defendants' MEDUSA facial capture

6  system infringes, for example, at least claim 1 of the '248 patent. Claim 1 of the '248 Patent

7  recites:

8      <u>Claim 1</u>

9      A system comprising:

10      A plurality of cameras, each capturing a plurality of two-dimensional (2D) frames of some
    or all of a surface of a performer's face as the performer's face changes in some or all of
11      the plurality of time intervals;

12      a processor that correlates the plurality of 2D frames from the plurality of cameras at the
    plurality of time intervals to create a high-resolution three-dimensional (3D) mesh
13      corresponding to a 3D shape of some or all of the surface of the performer's face at some
    or all of the time intervals;

14      wherein a first plurality of 3D points in the high-resolution 3D mesh automatically track a
15      second plurality of 3D points on the surface of the performer's face;

16      wherein the second plurality of 3D points on the surface of the performer's face are not
    identified by markers applied to the performer's face.
17

18      94.    Defendants Disney Company and Lucasfilm's MEDUSA system comprises a

19  plurality of cameras, each capturing a plurality of two-dimensional frames of some or all of a

20  performer's face as the performer's face changes in some or all of the plurality of time intervals.

21  For example, an article at FXGuide in 2018 explains that, "[t]he Medusa scanning rig was

22  developed by Disney Research Zurich and it captures an actor with multiple cameras in both still

23  poses (much like a LightStage) but also moving. This time based or 4D capture informs the team

24  with data showing how the face moves between key poses, as well as extremely high resolution

25  3D meshes of the key poses themselves." *See* <u>https://www.fxguide.com/fxfeatured/making-thanos-</u>

26  <u>face-the-avengers/</u>.

27      95.    Defendants Disney Company and Lucasfilm's MEDUSA system comprises a

28  processor that correlates the plurality of 2D frames from the plurality of cameras at the plurality of

time intervals to create a high-resolution three-dimensional (3D) mesh corresponding to a 3D shape of some or all of the surface of the performer's face at some or all of the time intervals, as set forth in the quote from the previous paragraph.

96.   In Defendants Disney Company and Lucasfilm's MEDUSA system, a first plurality of 3D points in the high-resolution 3D mesh automatically track a second plurality of 3D points on the surface of the performer's face. For example, Disney Research's website states that: "Medusa delivers high-resolution 3D faces, with the ability to track individual pores and wrinkles over time, and can recover per-frame dynamic appearance (blood flow and shininess of the skin), providing a very realistic virtual face that is ideal for creating digital doubles for visual effects and computer games." *See* https://studios.disneyresearch.com/medusa/.

97.   In Defendants Disney Company and Lucasfilm's MEDUSA system, the second plurality of 3D points on the surface of the performer's face are not identified by markers applied to the performer's face. Disney Company and Lucasfilm both advertise on their websites that MEDUSA does not require markers applied to the performer's face:

- "The Medusa Facial Capture system, developed by DisneyResearch|Studios, consists of a mobile rig of cameras and lights coupled with proprietary software that can reconstruct actor's faces in full motion, without using traditional motion-capture dots." *See* https://studios.disneyresearch.com/medusa/.

- "Originally developed by Disney Research, the Academy Award®-winning MEDUSA system continues to be enhanced by ILM and successfully used on some of the most notable blockbusters of the past few years. The system provides high-fidelity markerless facial capture, for static poses or in motion, and can travel to wherever your key talent is available." *See* https://www.ilm.com/facial_capture/.

98.   Because, as set forth above, and in particular, in Paragraphs 93 through 97, as an illustrative but nonexclusive example, the MEDUSA facial capture system practices each and every limitation of at least claim 1 of the '248 patent, Defendants Disney Company and Lucasfilm infringe the '248 patent each time they use the MEDUSA system to produce media content.

99.    Defendants' infringement of the '248 patent has been and remains willful and deliberate.

100.    Defendants' activities have been without Rearden Mova's authorization.

101.    Defendants' have profited through their infringement of the '248 patent.

102.    As a result of Defendants' infringement, Rearden Mova has been damaged and will be further damaged, and is entitled to be compensated for such damages pursuant to 35 U.S.C. § 284 in an amount that presently cannot be ascertained, but that will be determined at trial.

## FOURTH CLAIM FOR RELIEF

### Infringement of the '072 Patent (35 U.S.C. § 271)

### (Against Defendants Disney Company and Lucasfilm)

103.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 102 as though fully set forth herein.

104.    Defendants Disney Company and Lucasfilm have infringed and continues to infringe, directly and indirectly, literally or under the doctrine of equivalents, the '072 patent, by using, or by making, importing, offering to sell, and/or selling products or processes that are used to, practice one or more inventions claims in the '072 patent, as well as by knowingly, actively and intentionally inducing others to infringe the '072 patent, including but not limited to other streaming video services and customers, and/or by contributing to the infringement of the '072 patent by others, including but not limited to other streaming video services and customers. Such infringing conduct includes, but is not limited to, Defendants' marketing and sale of its Disney+ streaming video service when used to stream movies, television programs, and other media created using the MEDUSA facial capture system.

105.    As an illustrative but nonexclusive example, Defendants' Disney+ streaming video service's communication of movies, television programs, and other media created using the MEDUSA facial capture systems infringes, for example, at least claim 9 of the '072 patent. Claim 9 of the '072 patent recites:

Claim 9

A method comprising:

communicating data representing a rendered animated three-dimensional (3D) face;

the data including a rendering of a first plurality of 3D points on at least part of the rendered animated 3D face at a first plurality of time intervals correlated to a high resolution second plurality of 3D points on at least part of a surface of a performer's face at a second plurality of time intervals;

wherein the second plurality of 3D points on the surface of the performer's face were not identified by markers applied to the performer's face; and
wherein a processor automatically tracked the second plurality of 3D points.

106.    Defendant Disney Company's Disney+ service communicates data representing a rendered animated three-dimensional (3D) face when it streams media produced with the MEDUSA system (including, for example, "Smart Hulk" in *Avengers: Endgame* and the Genie in *Aladdin*).

107.    The data communicated by the Disney + service when it streams media produced with the MEDUSA system includes a rendering of a first plurality of 3D points on at least part of the rendered animated 3D face at a first plurality of time intervals correlated to a high resolution second plurality of 3D points on at least part of a surface of a performer's face at a second plurality of time intervals. As set forth in paragraphs 94 - 96 above, the MEDUSA scanning rig captures a high resolution plurality of 3D points on at least part of a surface of a performer's face at a plurality of time intervals, and then creates a realistic virtual face (the rendering of the first plurality of 3D points on at least part of the rendered animated 3D face) correlated to the high resolution plurality of 3D points from the performer's face.

108.    As set forth in paragraph 97 above, when the MEDUSA scanning rig captures the second plurality of 3D points on at least part of a surface of a performer's face, and on at least part of the surface of the performer's those points are not identified by markers applied to the performer's face.

109.    As set forth in paragraph 96 above, in media created with the MEDUSA scanning rig, a processor automatically tracks the second plurality of 3D points.

110.    Because, as set forth above, and in particular, in Paragraphs 105 through 109, the Disney+ service's streaming of media created with the MEDUSA facial capture systems practices

3125-1003 / 2126338

1    each and every limitation of at least claim 9 of the '072 patent, the Disney+ service infringes the

2    '072 patent each time it streams media created with the MEDUSA facial capture systems.

3          111.    On information and belief, Defendants had actual notice of the '072 patent at least

4    as early as the service of this Complaint.

5          112.    Because, as set forth above, and in particular, in Paragraphs 105 through 109, as an

6    illustrative but nonexclusive example and on information and belief, Defendant Lucasfilm creates

7    3D animated faces using MEDUSA to be communicated on Disney+, and on information and

8    belief, Defendant LucasFilm had actual notice and knowledge of the '072 patent, Defendant

9    Lucasfilm provided to Defendant Disney Company a material component of the infringing

10   Disney+ system, and especially made or adapted that material component for use in the infringing

11   Disney+ system.

12         113.    Defendants Disney Company and Lucasfilm also provide films made with

13   MEDUSA to other streaming platforms not controlled by Defendants. For example, *Space Jam: A*

14   *New Legacy* is available through the streaming service HBO Max, and *No Time to Die* is available

15   for video on demand purchase through YouTube, Amazon Prime Video, and Apple TV+.

16         114.    Because, as set forth above, and in particular, in Paragraphs 105 through 109 and

17   113, as an illustrative but nonexclusive example and on information and belief, Defendants

18   Lucasfilm and Disney Company create 3D animated faces using MEDUSA to be communicated

19   on streaming platforms other than Disney+ (including but not limited to HBO Max, YouTube,

20   Apple TV+, and Amazon Prime Video), and on information and belief, Defendants Disney

21   Company and Lucasfilm had actual notice and knowledge of the '072 patent, Defendants Disney

22   Company and Lucasfilm provided to those other streaming platforms a material component of the

23   infringing streaming systems, and especially made or adapted that material component for use in

24   the infringing streaming systems.

25         115.    Because, as set forth above, and in particular, in Paragraphs 105 through 109 and

26   113, as an illustrative but nonexclusive example and on information and belief, Defendants

27   Lucasfilm and Disney Company create 3D animated faces using MEDUSA to be communicated

28   on streaming platforms other than Disney+ (including but not limited to HBO Max, YouTube,

1   Apple TV, and Amazon Prime Video), and on information and belief, Defendants Disney

2   Company and Lucasfilm had actual notice and knowledge of the '072 patent, Defendants Disney

3   Company and Lucasfilm specifically intended these other streaming platforms to infringe the '072

4   patent and knew that the other streaming platforms' acts constituted infringement.

5       116.    Defendants' infringement of the '072 patent has been and remains willful and

6   deliberate.

7       117.    Defendants' activities have been without Rearden Mova's authorization.

8       118.    Defendants' have profited through their infringement of the '072 patent.

9       119.    As a result of Defendants' infringement, Rearden Mova has been damaged and will

10  be further damaged, and is entitled to be compensated for such damages pursuant to 35 U.S.C. §

11  284 in an amount that presently cannot be ascertained, but that will be determined at trial.

## FIFTH CLAIM FOR RELIEF

### Infringement of the '790 Patent

### (Against Defendants Disney Company and Lucasfilm)

15      120.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 119 as

16  though fully set forth herein.

17      121.    Defendants Disney Company and Lucasfilm have infringed and continues to

18  infringe, directly and indirectly, literally or under the doctrine of equivalents, the '790 patent, by

19  using, or by making, importing, offering to sell, and/or selling products or processes that are used

20  to, practice one or more inventions claims in the '790 patent, as well as by knowingly, actively

21  and intentionally inducing others to infringe the '790 patent, including but not limited to other

22  streaming video services and customers, and/or by contributing to the infringement of the '790

23  patent by others, including but not limited to other streaming video services and customers. Such

24  infringing conduct includes, but is not limited to, Defendants' marketing and sale of its Disney+

25  streaming video service when used to stream movies, television programs, and other videos

26  created using the MEDUSA facial capture system.

27      122.    As an illustrative but nonexclusive example, Defendants' Disney+ streaming video

28  service's communication of movies, television programs, and other media created using the

MEDUSA facial capture systems infringes, for example, at least claim 9 of the '790 patent. Claim 9 of the '790 patent recites:

Claim 9

A method comprising:

communicating a movie or video that includes a rendered animated three-dimensional (3D) face;

at least part of the movie or video including a rendering of a first plurality of 3D points on at least part of the rendered animated 3D face at a first plurality of time intervals correlated to a high resolution second plurality of 3D points on at least part of a surface of a performer's face at a second plurality of time intervals;

wherein the second plurality of 3D points on the surface of the performer's face were not identified by markers applied to the performer's face; and

wherein a processor automatically tracked the second plurality of 3D points.

123.    Defendant Disney Company's Disney+ service communicates movies and/or videos that include a rendered animated three-dimensional (3D) face when it streams movies and/or videos produced with the MEDUSA system (including, for example, "Smart Hulk" in *Avengers: Endgame* and the Genie in *Aladdin*).

124.    The movies and/or videos communicated by the Disney+ service when it streams movies and/or videos produced with the MEDUSA system includes a rendering of a first plurality of 3D points on at least part of the rendered animated 3D face at a first plurality of time intervals correlated to a high resolution second plurality of 3D points on at least part of a surface of a performer's face at a second plurality of time intervals. As set forth in paragraphs 94 - 96 above, the MEDUSA scanning rig captures a high resolution plurality of 3D points on at least part of a surface of a performer's face at a plurality of time intervals, and then creates a realistic virtual face (the rendering of the first plurality of 3D points on at least part of the rendered animated 3D face) correlated to the high resolution plurality of 3D points from the performer's face.

125.    As set forth in paragraph 97 above, when the MEDUSA scanning rig captures the second plurality of 3D points on at least part of a surface of a performer's face, and on at least part of the surface of the performer's face those points are not identified by markers applied to the performer's face.

126.    As set forth in paragraph 96 above, in media created with the MEDUSA scanning rig, a processor automatically tracks the second plurality of 3D points.

127.    Because, as set forth above, and in particular, in Paragraphs 122 through 126, as an illustrative but nonexclusive example, the Disney+ service's streaming of movies or videos created with the MEDUSA facial capture systems practices each and every limitation of at least claim 9 of the '790 patent, the Disney+ service infringes the '790 patent each time it streams movies or videos created with the MEDUSA facial capture systems.

128.    On information and belief, Defendants had actual notice of the '790 patent at least as early as the service of this Complaint.

129.    Because, as set forth above, and in particular, in Paragraphs 122 through 126, and as an illustrative but nonexclusive example and on information and belief, Defendant Lucasfilm creates 3D animated faces using MEDUSA for movies and videos to be communicated on Disney+, and on information and belief, Defendant Lucasfilm had actual notice and knowledge of the '072 patent, Defendant Lucasfilm provided to Defendant Disney Company a material component of the infringing Disney+ system, and especially made or adapted that material component for use in the infringing Disney+ system.

130.    Defendants Disney Company and Lucasfilm also provide films made with MEDUSA to other streaming platforms not controlled by Defendants. For example, *Space Jam: A New Legacy* is available through the streaming service HBO Max, and *No Time to Die* is available for video on demand purchase through YouTube, Amazon Prime Video, and Apple TV+.

131.    Because, as set forth above, and in particular, in Paragraphs 122 through 126 and 130, as an illustrative but nonexclusive example and on information and belief, Defendants Lucasfilm and Disney Company create 3D animated faces using MEDUSA to be communicated on streaming platforms other than Disney+ (including but not limited to HBO Max, YouTube, Apple TV+, and Amazon Prime Video), and on information and belief, Defendants Disney Company and Lucasfilm had actual notice and knowledge of the '790 patent, Defendants Disney Company and Lucasfilm provided to those other streaming platforms a material component of the

1  infringing streaming systems, and especially made or adapted that material component for use in

2  the infringing streaming systems.

3      132.    Because, as set forth above, and in particular, in Paragraphs 122 through 126 and

4  130, as an illustrative but nonexclusive example and on information and belief, Defendants

5  Lucasfilm and Disney Company create 3D animated faces using MEDUSA to be communicated

6  on streaming platforms other than Disney+ (including but not limited to HBO Max, YouTube,

7  Apple TV+, and Amazon Prime Video), and on information and belief, Defendants Disney

8  Company and Lucasfilm had actual notice and knowledge of the '790 patent, Defendants Disney

9  Company and Lucasfilm specifically intended these other streaming platforms to infringe the '790

10  patent and knew that the other streaming platforms' acts constituted infringement.

11      133.    Defendants' infringement of the '790 patent has been and remains willful and

12  deliberate.

13      134.    Defendants' activities have been without Rearden Mova's authorization.

14      135.    Defendants' have profited through their infringement of the '790 patent.

15      136.    As a result of Defendants' infringement, Rearden Mova has been damaged and will

16  be further damaged, and is entitled to be compensated for such damages pursuant to 35 U.S.C. §

17  284 in an amount that presently cannot be ascertained, but that will be determined at trial.

18  **<u>PRAYER FOR RELIEF</u>**

19      WHEREFORE, Plaintiffs respectfully request the Court to enter judgment against

20  Defendants and against their respective subsidiaries, successors, parents, affiliates, officers,

21  directors, agents, servants, employees, and all persons in active concert or participation with them,

22  granting the following relief:

23      1.    The entry of judgment in favor of Plaintiffs and against Defendants;

24      2.    An award of damages against Defendants adequate to make Plaintiffs whole for

25      Defendants' copyright infringement pursuant to 17 U.S.C. § 504, including an

26      award of (a) actual damages; and (b) any additional profits of Defendants that are

27      attributable to the copyright infringements alleged herein and are not taken into

28      account in computing the actual damages;

3125-1003 / 2126338

3.    An award of damages against Defendants adequate to make Plaintiffs whole for Defendants' patent infringement, including its lost profits, but in no event less than a reasonable royalty as permitted by 35 U.S.C. § 284, together with prejudgment interest from the date the infringement began;

4.    An award of enhanced damages for willful patent infringement of three times the amount of damages found or assessed, pursuant to 35 U.S.C. § 284;

5.    A finding that this case is exceptional and an award to Plaintiffs of its reasonable attorneys' fees and costs as provided by 35 U.S.C. § 285;

6.    An award to Plaintiffs of its reasonable attorneys' fees and costs as provided by 17 U.S.C. § 505;

7.    A permanent injunction prohibiting further infringement of the Rearden Patents; and

8.    Such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(d) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

Dated:  April 21, 2022                           Respectfully submitted,

**ZUBER LAWLER LLP**
JOSHUA M. MASUR
BRIAN J. BECK

By:    _/s/ Joshua M. Masur_
                                          Attorneys for Plaintiffs
                                          REARDEN LLC and REARDEN MOVA LLC

COMPLAINT FOR COPYRIGHT AND PATENT INFRINGEMENT

3125-1003 / 2126338