KELLY M. KLAUS (SBN 161091)
kelly.klaus@mto.com
BLANCA F. YOUNG (SBN 217533)
blanca.young@mto.com
JOHN L. SCHWAB (SBN 301386)
john.schwab@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone:     (650) 858-6000
Facsimile:     (650) 858-6100

JOSEPH TAYLOR GOOCH (SBN 294282)
Taylor.Gooch@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1 Front Street, Suite 3500
San Francisco, California 94111
Telephone:     (628) 235-1000
Facsimile:     (628) 235-1001

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| REARDEN LLC and REARDEN MOVA LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>TWDC ENTERPRISES 18 CORP. f/k/a THE WALT DISNEY COMPANY, a Delaware corporation, DISNEY STUDIO PRODUCTION SERVICES CO., LLC f/k/a WALT DISNEY PICTURES PRODUCTION, LLC, a California Corporation, WALT DISNEY PICTURES, a California corporation, MARVEL STUDIOS, LLC, a Delaware limited liability company, MVL FILM FINANCE LLC, a Delaware limited liability company, LUCASFILM LTD. LLC, a California limited liability company, and DOES 1-10,<br><br>Defendants. | Case No. 4:22-cv-02464-JST<br><br>**NOTICE OF MOTION AND MOTION FOR PARTIAL DISMISSAL OF PLAINTIFFS' FOURTH AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     August 1, 2024<br>Time:    2:00 p.m.<br>Judge:   Hon. Jon S. Tigar<br>Ctrm.:    6 (2nd Floor) |

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

BACKGROUND ............................................................................................................................ 3

    A.    Rearden's First Attempt To Allege Copyright Infringement And The Court's First Dismissal Order ............................................................................. 3

    B.    The Third Amended Complaint And The Court's Second Dismissal Order ............ 5

    C.    The Fourth Amended Complaint ................................................................... 6

STANDARD OF REVIEW ............................................................................................................ 6

ARGUMENT .................................................................................................................................. 7

I.    REARDEN STILL FAILS TO PLAUSIBLY ALLEGE DIRECT COPYRIGHT INFRINGEMENT BY DD3 ................................................................................................ 7

    A.    Rearden Does Not Plausibly Allege Infringement In The Creation Of The Hulk ............................................................................................................... 7

    B.    Rearden Does Not Plausibly Allege Infringement In The Creation Of Ebony Maw ............................................................................................................. 9

II.    REARDEN STILL FAILS TO PLAUSIBLY ALLEGE THAT DEFENDANTS ARE LIABLE FOR SECONDARY COPYRIGHT INFRINGEMENT ............................ 11

    A.    Rearden Does Not Plausibly Allege Contributory Copyright Infringement ............ 11

        1.    Rearden's Conclusory Knowledge Allegations Cannot Be Squared With The Other Facts Alleged In The 4AC ............................................. 11

        2.    Rearden Does Not And Cannot Allege That Defendants Induced Or Materially Contributed To DD3's Claimed Infringement ........................ 13

    B.    Rearden Does Not Plausibly Allege Vicarious Liability ...................................... 13

III.    FURTHER AMENDMENT WOULD BE FUTILE ......................................................... 15

CONCLUSION ............................................................................................................................. 16

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) .................................................................................................. 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................................. 6

*Atari Interactive, Inc. v. Redbubble, Inc.*,
   515 F. Supp. 3d 1089 (N.D. Cal. 2021) ................................................................................... 15

*Columbia Pictures Indus., Inc. v. Fung*,
   710 F.3d 1020 (9th Cir. 2013) ................................................................................................. 13

*Davis v. Pinterest, Inc.*,
   No. 19-cv-07650-HSG, 2021 WL 879798 (N.D. Cal. Mar. 9, 2021) ....................................... 11

*Ellison v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004) ................................................................................................. 15

*Kilina Am., Inc. v. SA & PW, Inc.*,
   No. CV 19-03786-CJC, 2019 WL 8685066 (C.D. Cal. Aug. 27, 2019) .................................. 14

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
   658 F.3d 936 (9th Cir. 2011) ................................................................................................... 13

*Luvdarts, LLC v. AT&T Mobility, LLC*,
   710 F.3d 1068 (9th Cir. 2013) ................................................................................................. 11

*Menzel v. Scholastic, Inc.*,
   No. 17-cv-05499-EMC, 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) .................................... 6

*Perfect 10, Inc. v. Amazon.com*,
   508 F.3d 1146 (9th Cir. 2007) ........................................................................................... 13, 14

*Rearden LLC v. Walt Disney Co.*,
   No. 17-cv-04006-JST, 2018 WL 3031885 (N.D. Cal. June 18, 2018) .................................... 13

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) ..................................................................................................... 2

*United States v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) ..................................................................................................... 8

*Vespa v. Singler-Ernster, Inc.*,
   No. 16-CV-03723-RS, 2016 WL 6637710 (N.D. Cal. Nov. 8, 2016) ........................................ 5

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) .................................................................................................. 11

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................................................................................... 2

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on August 1, 2024, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6 (2nd Floor) of the above-captioned Court, located at 1301 Clay Street, Oakland, CA 94612, Defendants will and hereby do move the Court for an Order dismissing with prejudice the First Claim for Relief (Vicarious and Contributory Copyright Infringement) in Plaintiffs' (or "Rearden") Fourth Amended Complaint (Dkt. 77) ("4AC"), for failure to state a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declaration of Kelly M. Klaus ("Klaus Decl."); all pleadings on file; and any other matter submitted prior to or at the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Even after two years and four amendments, Rearden still fails to allege direct copyright infringement by DD3 or secondary infringement by Defendants.  The 4AC confirms that Rearden did not, does not, and never will have a factual basis to plausibly allege that DD3 infringed the copyright in the MOVA software program in connection with *Avengers: Infinity War* and *Avengers: Endgame*, much less that Defendants could be indirectly liable.

Rearden's multiple amendments have steadily retreated from its original complaint.  Rearden started this case by claiming that—notwithstanding this Court's injunction, Defendants' contractual bar on DD3's use of MOVA, and widely publicized images of actor Josh Brolin wearing non-MOVA head-mounted cameras—DD3 secretly used MOVA to capture Brolin's facial performance as Thanos.  Rearden's only basis for that claim was the appearance of the word "mova" in several file-path names (among untold thousands of such names) in Excel spreadsheets produced as part of the asset-return process.  *See* Dkt. 46-1 ¶¶ 43–50.  The Court held those file-path-name allegations did not plausibly allege that DD3 directly infringed.  Dkt. 54 at 6–7.

After requesting multiple extensions so that it could receive more files from DD3, Rearden filed its Third Amended Complaint ("TAC").  *See* Dkt. 64.  But despite *eight months* passing since it had filed the SAC, *see* Dkt. 66, Rearden added no new Thanos allegations to the TAC.  *Compare* Dkt. 46-1; *with* Dkt. 64.  Instead, Rearden claimed that a handful of Maya files supposedly showed

that DD3 used MOVA for the facial motion capture of two entirely different characters, the Hulk and Ebony Maw. Dkt. 64 ¶¶ 51–57. The Court found the Hulk-Ebony Maw direct infringement theories implausible. Dkt. 76 at 7. Taking note of Rearden's assertion that it was still receiving files in the asset-return process, the Court gave Rearden "one final chance to amend." *Id.* at 16.

Rearden's "final chance" is the 4AC. The 4AC, like the TAC before it, contains no new Thanos allegations and no allegations that MOVA hardware was used to capture any actor's performance. The handful of new allegations about the Hulk are not really new—they are based on the same three Maya files that Rearden had when it filed the TAC, and they still fail to set forth a plausible explanation as to how or why DD3 would have used MOVA software to process facial captures performed by a different vendor using non-MOVA hardware.

The only 4AC allegation purportedly based on a "new" file concerns a single Maya file related to Ebony Maw. Again, this turns out not to be new at all. The Ebony Maw allegations in the TAC were based on a screenshot of this *same* file. *See* Dkt. 64 ¶ 54. Although Rearden now has the Maya file, and not just a screenshot, Rearden does *not* allege facts showing the Maya file actually contains MOVA source code. The 4AC instead relies only on file-path naming conventions, which the Court already has held to be insufficient.

Rearden's founder Steve Perlman testified that the use of MOVA "would necessarily . . . have created Contour capture and processed works that, based on my knowledge and experience, would have consisted of many terabytes of files." Klaus Decl. Ex. 4 (*Rearden 1* Dkt. 68) ¶ 19.[1] Rearden has now had years—including nearly two years of time to amend its complaint in this case—to review tens of thousands of DD3 files. Despite all that time and all those files, Rearden's "last chance" pleading comes down to allegations based on just four *Maya* (*not* MOVA) files, none of which provides a plausible basis to believe that DD3 copied MOVA software for *Infinity War* or *Endgame*.

The Court should dismiss Rearden's copyright claim with prejudice.

---

[1] The Court may take judicial notice of documents filed in the public record in the earlier *Rearden 1* litigation, also before this Court. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1024 (N.D. Cal. 2014).

# BACKGROUND

### A. Rearden's First Attempt To Allege Copyright Infringement And The Court's First Dismissal Order

Rearden filed this case in April 2022, after litigating *Rearden 1* for nearly five years and going through years of the asset-return process in *SHST v. Rearden*. Rearden's copyright claim in the first three versions of its complaint[2] focused on the creation of "a CG (computer graphics) villain, Thanos, played by Josh Brolin" and alleged by Rearden to be the "center[]" of "two of the highest grossing movies of all time." Dkt. 46-1 ¶¶ 1–2.  Rearden alleged that Defendants and DD3 "claimed in numerous publications that they used [Defendants'] own facial capture technology ['MEDUSA'] to create Thanos." *Id.* ¶ 3.  This was a "lie[]," Rearden alleged, because "[d]ocuments recently identified and returned to Plaintiffs by DisputeSoft and the Special Master" purportedly "indicate[d] that all or part of the work to animate Thanos was in fact performed using Plaintiffs' MOVA Contour facial capture system and software." *Id.* ¶ 6.

While long on rhetoric, Rearden's complaint was short on detail as to how DD3 supposedly used MOVA to animate Thanos.  Rearden's pleadings in *Rearden 1* included dozens of pages describing how MOVA allegedly works. *See, e.g.*, Klaus Decl. Ex. 3 (*Rearden 1* FAC) ¶¶ 17–60. Rearden said that MOVA facial capture involves applying phosphorescent makeup to the actor's face, and the actor delivering their performance inside a metal rig outfitted with 32 cameras whose shutters are synchronized with strobing lights. *Id*. ¶¶ 4, 27–33.  Rearden filled its complaint with images of actors, whose faces were sprayed with phosphorescent makeup and who were perched in the MOVA rig, ready for facial motion capture. *Id*. ¶ 56.  Rearden alleged its system generated four types of MOVA output files, including a "Tracking Mesh," that "tracks points on the skin of the performer," but not facial features such as the "eyes or mouth" (because the phosphorescent makeup is applied to the actor's skin, not the eyeballs or teeth). *Id*. ¶¶ 29–30, 33–35.

---

[2] Rearden voluntarily amended its initial complaint twice, including once in response to Defendants' first motion to dismiss. *See* Dkts. 1, 15, 37, 38. Rearden also filed a corrected version of its Second Amended Complaint ("SAC"). *See* Dkt. 46-1. The initial Complaint, First Amended Complaint, SAC, and the corrected SAC all advanced the exact same theory regarding Thanos, so the above description cites to the corrected SAC, which is at Dkt. 46-1.

In this case, however, the only *Infinity War* or *Endgame* images that Rearden put in the complaint showed Josh Brolin having his facial motions captured *without* MOVA:



Dkt. 46-1 ¶ 42. These images confirm that MOVA was *not* used to capture facial performances for *Infinity War* or *Endgame*. Brolin is wearing a head-mounted camera—which the MOVA system does not use—and is not performing in the MOVA rig. A discrete set of dots are visible on Brolin's face, not the MOVA-required phosphorescent makeup. And the renderings of Thanos's face include eyes and teeth, which MOVA cannot capture. *See id.*; *cf.* Klaus Decl. Ex. 3 (*Rearden 1* FAC) ¶ 29.

The documents that Rearden said had been "identified and returned" to it, and that supposedly showed the infringement, Dkt. 46-1 ¶ 6, turned out not to be software files at all. As the Court described them, they were spreadsheets "created by DD3" that included the word "mova" and had "date entries coinciding with the production dates for the *Avengers: Infinity War* and *Avengers: Endgame* projects" as well as "information indicating that the listed files were used in those projects, and information allegedly identifying DD3 employees that worked on the projects." Dkt. 54 at 4–5.

The Court dismissed the claim. It noted that Rearden had not explained how it knew that "DD3 must have created these files using the MOVA Contour software"; the Court therefore had "to guess as to how modification of an existing output file indicates that the file was created by the operation of MOVA system during facial capture shoots for a specific project." *Id.* at 6–7. "[F]undamentally, the Court finds that Rearden does not plausibly allege that DD3 used the MOVA software to create output files," including because Rearden did not "identify any such files." *Id.* at 5–7.

Rearden's subsequent complaints have neither explained how or why MOVA would be used to "modif[y] an existing output file" nor identified any MOVA output files.

### B. The Third Amended Complaint And The Court's Second Dismissal Order

The TAC made no new allegations regarding the central (and inadequate) claim in all of Rearden's prior complaints: that MOVA software was infringed in the creation of the Thanos character. The TAC instead added seven paragraphs alleging that MOVA software was used to create two *different* characters from *Infinity War* and *Endgame*: the Hulk and Ebony Maw. *See* Dkt. 64 ¶¶ 51–57. In support of those claims, Rearden did not point to any MOVA output file. *See id.* Rather, Rearden claimed that a *Maya* file (which is not MOVA), and a screenshot of a different Maya file, showed that MOVA was used to animate the Hulk and Ebony Maw, respectively. *Id.* ¶¶ 52, 54.

The Court held that "[t]hese amendments are insufficient to cure the deficiencies in Rearden's copyright claim." Dkt. 76 at 5. As to the Hulk, the Court noted that Rearden alleged that the Maya file's "date of creation" supposedly showed the file had been used for one or both *Avengers* films. The Court found this allegation insufficient because Rearden had not actually identified a creation date. *Id.* at 5 & n.2.

The Court next held that "[a]llegations that a Maya file of the Ebony Maw character used the word 'mova' in its naming conventions, without more, is insufficient to establish a reasonable inference that the file itself contained MOVA source code, or that DD3's Masquerade software copied 'substantial amounts' of MOVA source code." *Id.* at 7.

Rearden represented that it "still ha[d] not received documents in DD3's possession from the Ownership Litigation that could show additional relevant acts of direct infringement." *Id.* at 16 (quoting Dkt. 72 at 28). Based on this representation, the Court granted Rearden "one final chance to amend," while noting that Rearden should do so only if it could "'make [its] averments without caveat and/or with additional detail explaining the basis of [its] beliefs.'" Dkt. 76 at 16 (quoting *Vespa v. Singler-Ernster, Inc.*, No. 16-CV-03723-RS, 2016 WL 6637710, at *2 (N.D. Cal. Nov. 8, 2016)). Rearden continues to make nearly all of its key allegations on information and belief and has failed to add any factual allegations suggesting those beliefs are remotely plausible.

### C. The Fourth Amended Complaint

The 4AC contains no new allegations relating to Thanos. Despite telling the Court that it should be given leave to amend because it was still receiving documents from DD3 as part of the asset-return process, Rearden relies on the *same* Hulk and Ebony Maw files that underlay its claims in the TAC. Klaus Decl. Ex. 1.[3] Rearden adds a handful of new allegations about each.

Rearden's new Hulk allegations are centered on the alleged date of creation of what the 4AC calls the "Ruffalo Maya Files." Rearden now alleges that these files *were created* sometime between August and September 2016, and that those dates align with a date for an "actor shoot" found in Defendants' contract with DD3 for the *Infinity War* film. *See* 4AC ¶¶ 53–56. Rearden still does not identify any MOVA output files (as opposed to Maya files) and still does not explain how MOVA software would be incorporated into Maya software, or why there are no MOVA output files if MOVA was indeed used to create the Hulk character.

The 4AC's new Ebony Maw allegations are not really "new" at all. Although DD3 has now produced, at Rearden's request, the Ebony Maw Maya file, Rearden's allegations are essentially the same as those it made in the TAC (where its claims were based on a screenshot of the same file). Once again, Rearden claims that the appearance of the word "mova" in various naming conventions establishes that MOVA was used to animate the Ebony Maw character. 4AC ¶¶ 60–63.

Rearden's scant new allegations, again pleaded largely on information and belief, fail to transform Rearden's previous, insufficient allegations into a plausible claim of copyright infringement.

### STANDARD OF REVIEW

Rearden must allege facts that establish its claims are plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "An allegation made on information and belief must still be based on factual information that makes the inference of culpability plausible." *Menzel v. Scholastic, Inc.*, No. 17-cv-05499-EMC, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018) (quotations omitted).

---

[3] As discussed above and below, the TAC alleged a single Maya Ruffalo file, while the 4AC alleges three such files. Rearden, however, had all three files in its possession when it filed the TAC.

-6-
MOTION TO DISMISS FOURTH AMENDED COMPLAINT
NO. 4:22-CV-02464

# ARGUMENT

## I. REARDEN STILL FAILS TO PLAUSIBLY ALLEGE DIRECT COPYRIGHT INFRINGEMENT BY DD3

Rearden cannot state a secondary infringement claim without "sufficiently alleg[ing] direct infringement" by DD3. Dkt. 54 at 4. Rearden's new allegations about the Hulk and Ebony Maw are premised on the same files Rearden had in its possession when it filed the TAC. Klaus Decl. Ex. 1. Thus, after repeatedly telling this Court that it would receive more concrete evidence of infringement in the asset-return process, Rearden has found *nothing* new about Thanos during the nearly two years this case has been pending. And Rearden has found *nothing* new about either Hulk or Ebony Maw in the 10 months since Rearden filed the TAC. The 4AC is a last-ditch effort to turn naming conventions found in less than a handful of third-party software files into a plausible claim for direct infringement. The effort fails.

### A. Rearden Does Not Plausibly Allege Infringement In The Creation Of The Hulk

The 4AC's allegations regarding "Ruffalo Maya Files" are premised on exactly three Maya files—the same three Maya files Rearden had when it filed the TAC. Klaus Decl. Ex. 1. Rearden's only new factual allegations regarding the Hulk are that (1) these three Maya files have "creation dates ranging from August 11, 2016, through September 22, 2016," and (2) "on information and belief," those dates "fall during the period when Defendants were performing . . . facial captures" for *Infinity War* and *Endgame*. 4AC ¶¶ 54–55.[4]

It appears that Rearden intends these minor amendments to address the Court's observation that that the TAC did not specify when the Ruffalo files were created and thus could not plausibly allege that the files were used for *Infinity War* and *Endgame*. But these new allegations do not turn Rearden's prior, insufficient pleadings into a plausible claim of copyright infringement.

---

[4] Rearden's creation-date allegations are contradicted by Rearden's prior representation that the August-September 2016 dates were "*last modified*" dates. *See* Dkt. 68-7; *see also* Dkt. 76 at 5 & n.2 (noting that Rearden's argument regarding a "creation date of September 2016 . . . seemingly conflicts with its own later representations that the 'last modified' date of the file was sometime in August or September"). Rearden provides no explanation for its shifting story. A display of the file information in Microsoft Windows shows that two have "date modified" dates of August 11, 2016, and a third has a "date modified" date of September 22, 2016. Klaus Decl. ¶ 3.

-7-

*First*, Rearden has failed to allege any facts that plausibly support its "belief" that the file dates are within the timeframe in which *Mr. Ruffalo's* facial motions were captured for *Infinity War* or *Endgame*. Rearden claims the DD3 contract for services on *Infinity War* "suggest[s] that DD3 was working on facial capture for the Avengers movies at or around the creation dates of the Ruffalo Maya Files." *Id*. ¶ 55. But the contract does *not* plausibly show that DD3 was capturing facial motions for *the Hulk* during this time.[5] The contract instead says that DD3 was hired to provide work related to a "*Thanos* Development" test, and not the Hulk or Ebony Maw. Dkt. 34-1 Ex. 1 (filed under seal at Dkt. 33-3), Schedule A (emphasis added). And the contract explicitly says that the "production"—i.e., the producers of the movie, and *not* DD3—would provide to DD3 any scans of the actor who played Thanos, Josh Brolin. *Id.* Nothing in the contract suggests that DD3 *ever* performed motion capture for any character on *Infinity War* or *Endgame* or that DD3 did any work on the Hulk for those movies. Rearden therefore has no plausible basis for its "belief."

Moreover, while Rearden alleges that the DD3 contracts support its claims, *e.g.*, 4AC ¶¶ 55, 86, the contracts actually show that DD3 was forbidden from using MOVA, was not contracted to work on facial motion capture at all, and was not contracted to do any work relating to either the Hulk or Ebony Maw. Dkt. 68-1 Exs. 1, 2 (filed under seal at Dkt. 67-2, 67-3).

*Second*, Rearden's new allegations are aimed at curing just one deficiency from the TAC (the date modified vs. the date created). The allegations do not address the other glaring holes in Rearden's implausible theory. Fundamentally, the 4AC's claim for direct copyright infringement fails for the same reason that Rearden's four previous attempts failed. Rearden does not and cannot allege that MOVA was used to capture Mr. Ruffalo for either *Infinity War* or *Endgame* and does not set forth any plausible explanation for how or why MOVA software would have been used when the performances were captured by a different technology.

---

[5] The Court may take judicial notice of the contract because (a) Rearden's only factual allegation supporting its claim about the timing of facial motion captures for the Hulk and Ebony Maw, and DD3's supposed involvement in those captures, is premised on the contract, and (b) Rearden's claim that Defendants had the right and ability to control DD3 is premised on the same contract. *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

Rearden alleges that Defendants used a different vendor and different technology for facial capture related to both films. 4AC ¶¶ 3, 9, 10, 74–76. And Rearden concedes that it cannot tell whether the three files showing Mr. Ruffalo "making a variety of exaggerated facial expressions" were created "using Mova or *another performance facial capture system*." 4AC ¶ 53 (emphasis added). Rearden has also admitted that it has no idea whether these files were used in connection with *Endgame* and *Infinity War* or some other film, such as *Thor: Ragnarok*. Dkt. 72 at 1, 4 & n. 2.

*Third*, Rearden's founder Steve Perlman has sworn under oath that using MOVA for facial capture "would necessarily have created Contour capture and processed works that, based on [his] knowledge and experience, would have consisted of many terabytes of files." Klaus Decl. Ex. 4 (*Rearden 1* Dkt. 68) ¶ 19. Rearden offers no facts that would make it plausible to believe that the capture and/or processing of Mr. Ruffalo's facial performance for *Infinity War* or *Endgame* would yield a grand total of just three Maya (not MOVA) software files.

Rearden therefore has either pled or admitted or cannot dispute that Defendants used a different vendor for facial motion capture; did not use DD3 for facial capture; barred DD3 from using MOVA; did not contract with DD3 to perform any work on Hulk or Ebony Maw; and did not create *any* MOVA software files, much less the "terabytes" Mr. Perlman swears would be a necessary by-product of using the software. Given all this, the inference that Rearden asks this Court to draw—that the appearance of Mr. Ruffalo's name in a few Maya files plausibly suggests that MOVA software was used to "animate the Hulk" in *Infinity War* and *Endgame*—is absurd. Rearden's new allegations about the date of creation of the three Maya files simply do not overcome that patent absurdity.

B. **Rearden Does Not Plausibly Allege Infringement In The Creation Of Ebony Maw**

The 4AC likewise fails to state an actionable claim of direct infringement by DD3 in connection with Ebony Maw. The TAC's Ebony Maw claim was based on a screenshot of a Maya file. Rearden states that it has "now obtained the [underlying] Maya file." 4AC ¶ 59. It is important to be clear that Rearden does *not* have this file because the Special Master determined that it contained MOVA source code. He did not. Rather, Rearden asked DD3 to produce the Ebony Maw

file just prior to filing the 4AC, Defendants did not object, and DD3 produced the file while maintaining its position that the file was not subject to the asset-return order. Klaus Decl. Ex. 2.

The Ebony Maw claim fails because the 4AC does not allege that the single Ebony Maw file actually contains MOVA source code. Rearden alleges only that the Ebony Maw file includes "script *references* to 'mova'" and "has source code that includes *identical elements and calls to* standard MOVA objects," 4AC ¶ 60 (emphasis added), and that those naming conventions are the same as found in a file from *Beauty and the Beast* ("BATB"), *id.* ¶¶ 61–65.

These allegations add nothing to what Rearden pled in the TAC. Just like the 4AC, the TAC alleged that the Ebony Maw Maya file "includes identical elements and identical naming conventions for objects such as 'mova_cache_md,' 'mova_originalHeadMotion,' and 'mova_cache_publish_set,'" and that the elements "are identical to and display identically to the same elements that appear in, for example, a Maya file that DD3 admits was created with Mova for *Beauty and the Beast*, and which contains Contour source code." TAC ¶ 55. The Court found those allegations insufficient in the TAC. The 4AC essentially repeats the same allegations, which likewise should be insufficient here.

Finally, the 4AC adds attorney argument—not allegations of fact—to the effect that DD3 would not "risk creating a non-Mova file" that included the word "mova" in naming conventions "*unless* DD3 was actually using MOVA source code." 4AC ¶ 65. Rearden's argument ignores that the Special Master and DisputeSoft have not ordered this file returned—meaning there has been no finding that the file contains MOVA source code. Indeed, it does not appear the Special Master has ordered *any* file related to Ebony Maw returned to Rearden.

\* \* \*

Rearden has failed to state a claim for direct copyright infringement by DD3 in connection with Thanos, or the Hulk, or Ebony Maw. The indirect copyright infringement claim against Defendants must be dismissed, with prejudice, for this reason alone.

## II. REARDEN STILL FAILS TO PLAUSIBLY ALLEGE THAT DEFENDANTS ARE LIABLE FOR SECONDARY COPYRIGHT INFRINGEMENT

### A. Rearden Does Not Plausibly Allege Contributory Copyright Infringement

Even if Rearden alleged direct infringement, the contributory infringement claim would fail because Rearden does not plausibly allege that either (1) Defendants knew of DD3's infringement or (2) "(a) materially contribute[d] to or (b) induce[d] that infringement." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 745 (9th Cir. 2019).

#### 1. Rearden's Conclusory Knowledge Allegations Cannot Be Squared With The Other Facts Alleged In The 4AC

The 4AC fails to allege that Defendants had "actual knowledge of specific acts of infringement" or that Defendants were "[w]illful[ly] blind[] [to] specific facts." *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072–73 (9th Cir. 2013).

*First*, Rearden claims that that Defendants "had actual knowledge of DD3's specific acts of infringement at least by virtue of having notice of the Preliminary Injunction Order" in the *SHST* litigation. 4AC ¶ 85. As this Court held in granting summary judgment on contributory infringement in *Rearden 1*, a preliminary injunction order does not establish ownership and is therefore insufficient, as a matter of law, to establish knowledge of ownership. Klaus Decl. Ex. 5 (*Rearden 1* Dkt. 569-1) at 8.

*Second*, Rearden alleges, "[o]n information and belief," that "Defendants were fully aware that DD3 used unauthorized Contour output files created using the stolen and copyrighted Mova software, or using software that included copied source code from the stolen and copyrighted Mova software." 4AC ¶ 69. The 4AC does not plausibly allege any specific act of infringement by DD3 that was known to, or discoverable by, Defendants. *See, e.g.*, *Davis v. Pinterest, Inc.*, No. 19-cv-07650-HSG, 2021 WL 879798, at *3 (N.D. Cal. Mar. 9, 2021) (dismissing complaint where alleged communications between plaintiff and defendant concerned "misuse of [plaintiff's] photographs generally" but "did not identify any specific acts of infringement"). It does not allege that MOVA was used to capture any of the actors in these films, or attempt to explain how Defendants would have been "fully aware" that three Maya files relating to Mark Ruffalo contained some snippet of

MOVA code, or that a single Maya file depicting Ebony Maw contained naming conventions, some of which included the word "mova."

*Third*, Rearden alleges that Defendants had knowledge that "DD3 continued to use employees involved with MOVA Technology." 4AC ¶ 70. As Defendants have explained, allegations about two of those individuals (Berry, Moser) are based entirely on their names appearing in spreadsheets Rearden received in the asset return process—the same spreadsheets that Rearden relied on for its legally insufficient Thanos claims. Dkt. 34 at 13–14; Dkt. 42 at 13–14; Dkt. 68 at 11. These allegations fail for the same reason that the Thanos allegations failed: a mere spreadsheet entry is not plausible evidence that Berry or Moser actually used MOVA, much less that Defendants knew they were using MOVA in connection with the *Avengers* movies. DD3 promised Defendants that no DD3 employee who had been involved with MOVA technology would work on either *Infinity War* or *Endgame*. Dkt. 68-1 Ex. 1 ¶ 16(g) (filed under seal at Dkt. 67-2); *id.* Ex. 2 ¶ 17(g) (filed under seal at Dkt. 67-3). Rearden does not even plausibly allege Berry and Moser were, in fact, involved with MOVA technology on prior films and were, in fact, using MOVA on *Endgame* and *Infinity War*, much less that Defendants had reason to know about either their prior work or their work on the two films.

As to LaSalle, there is no plausible allegation that he had any involvement in these films. Defendants' contracts with DD3 for the *Avengers* films specifically bar LaSalle from working on the movies, and bar DD3 from using MOVA technology. Dkt. 68-1 Ex. 1 ¶ 16(g) (filed under seal at Dkt. 67-2); *id.* Ex. 2 ¶ 17(g) (filed under seal at Dkt. 67-3). The 4AC alleges "[o]n information and belief" that a picture of LaSalle was created "in connection with" *Avengers*. 4AC ¶ 42. The 4AC claims that Defendants contractually barred LaSalle from working on the films, but then permitted him to do so for reasons unknown. That is not plausible.

The allegation is especially strained because there is no allegation that LaSalle provided any facial performance for either *Avengers* film, and the photo of LaSalle shows him wearing a head-mounted camera (necessarily precluding the possibility of MOVA's rig-based capture). It is telling that Rearden's SAC told this Court that further evidence would confirm LaSalle's involvement, Dkt. 46-1 ¶ 42, but in the eighteen months since, Rearden has not plead a single new fact in support of

this claim.

The 4AC fails to identify any discovery of any act of infringement and therefore fails to state a claim for contributory liability.

### 2. Rearden Does Not And Cannot Allege That Defendants Induced Or Materially Contributed To DD3's Claimed Infringement

The 4AC completely fails to allege that Defendants intended for DD3 to infringe MOVA software, and manifested that intent "affirmatively," through "words or actions." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013). The 4AC and the documents it incorporates instead show that Defendants acted to ensure that (1) neither DD3 nor MOVA would be involved in facial motion capture for the two movies and (2) DD3 would not use MOVA technology or personnel.

The 4AC also does not allege that Defendants "substantially assist[ed]" DD3 with "an essential step in the infringement process." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 943–44 (9th Cir. 2011) (quotations omitted). The 4AC repeats the allegation from *Rearden 1* that Defendants supplied a director and "various film crew" to "support and facilitate the facial performance capture." 4AC ¶¶ 89–90. This allegation did not suffice in *Rearden 1*; instead, the FAC was found sufficient because Rearden alleged that Defendants specifically contracted to have DD3 use MOVA. *Rearden LLC v. Walt Disney Co.*, No. 17-cv-04006-JST, 2018 WL 3031885, at *6 (N.D. Cal. June 18, 2018). Here, in contrast, the contracts with DD3 *forbade* the use of MOVA. Dkt. 68-1 Ex. 1 ¶ 16(f) (filed under seal at Dkt. 67-2); *id.* Ex. 2 ¶ 17(f) (filed under seal at Dkt. 67-3). And, as noted, there is no claim that the MOVA rig was used to capture any performance, while the *Rearden 1* complaints included allegations and actual photos of DD3 using the rig. In short, the 4AC does not allege that any infringement happened on set and therefore fails to allege that actors or directors had any role in any essential step of the infringement process.

### B. Rearden Does Not Plausibly Allege Vicarious Liability

Rearden fails to allege either of the elements of vicarious liability: that Defendants (1) had the requisite control, meaning both "a legal right to stop or limit the directly infringing conduct" and "the practical ability to do so," and (2) "derive[d] a direct financial benefit from the direct

infringement." *Perfect 10, Inc. v. Amazon.com*, 508 F.3d 1146, 1173 (9th Cir. 2007).

***Legal Right***:   Rearden alleges that Defendants had the legal right to stop DD3's alleged copying of MOVA software because it "contracted with DD3 for facial performance capture services and output works using the [MOVA] program for Disney's films" and could cancel the contracts at any time.  4AC ¶¶ 86, 91.  That is a cut-and-paste from the *Rearden 1* complaint, but here it is factually false and, in any event, insufficient.  As an initial matter, the mere fact that a party enters into a terminable contract is insufficient to establish right to control.  *See Amazon.com*, 508 F.3d at 1173–74 (right to "terminate partnerships" did not satisfy "control" element); *Kilina Am., Inc. v. SA & PW, Inc.*, No. CV 19-03786-CJC (KSx), 2019 WL 8685066, at *2 (C.D. Cal. Aug. 27, 2019) (such a theory of control is "highly indirect and attenuated" and "foreclosed by precedent").  More importantly, the contracts here do *not* engage DD3 to provide "facial performance captures services" and do *not* hire DD3 to use MOVA.  To the contrary, the contracts expressly forbade DD3 from using MOVA.  Dkt. 68-1 Ex. 1 ¶ 16(f) (filed under seal at Dkt. 67-2); *id.* Ex. 2 ¶ 17(f) (filed under seal at Dkt. 67-3).

***Practical Ability***:   Rearden further fails to allege practical ability because the 4AC does not allege that Defendants policed "detectable acts of infringement."  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001).  Rearden claims that, by supplying actors, directors, and a film crew, Defendants were in a position to detect that DD3 was using MOVA and to stop that use.  4AC ¶¶ 87–89.  But, as noted above, the 4AC does not allege any on-set infringement.  To the extent its theory is comprehensible at all, Rearden is alleging that DD3 used MOVA software at some later stage, in conjunction with Maya software, *after* the actors had been captured using different technology.  It is thus implausible that actors, directors or film crew would have had an ability to identify the claimed infringement.

Rearden also fails to allege any facts showing that Defendants could have detected DD3's alleged *ultra vires* use of MOVA software.  DD3 was forbidden to use MOVA technology or MOVA personnel.  Dkt. 68-1 Ex. 1 ¶¶ 16(f), (g) (filed under seal at Dkt. 67-2); *id.* Ex. 2 ¶¶ 17(f), (g) (filed under seal at Dkt. 67-3).  Rearden itself claims that it only discovered the supposed infringement here by examining lengthy spreadsheets and thousands of files before it found a few Maya files it

claims raise an inference of infringement. Rearden does not explain how Defendants should have discovered that DD3 had applied the "false name" of "Masquerade" to "Rearden's copyrighted and patented [MOVA] Contour software" or had used a Maya file that contained "mova" naming conventions. *See* 4AC ¶¶ 75. And Defendants are not required to "search[] for a needle in a haystack (where [Defendants] lack[ed] knowledge of [the] needles' appearance)." *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1116 (N.D. Cal. 2021). Rearden's view would render the practical ability prong meaningless: it would mean that every vendee would have a practical ability to control any infringement by a vendor, no matter how minor or hidden or obscured.

**Direct Financial Benefit**: Rearden also does not meet its burden to allege that DD3's purported copying of MOVA software was "a 'draw' for customers" of the movies. *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004). In *Rearden 1*, Rearden alleged that Defendants touted MOVA in promoting the movies. Klaus Decl. Ex. 3 (*Rearden 1* FAC) ¶¶ 2, 124, 138, 169. Here, Rearden alleges only that Defendants believed that "Contour facial performance motion capture would make the Thanos, Ebony Maw, Hulk, and Smart Hulk CG characters more believable and compelling." 4AC ¶ 92.

As explained, Rearden *does not allege* that Defendants employed "Contour facial performance motion capture" to capture any actor's performance. Rearden claims that Defendants used a *different* motion capture technology but then had DD3 secretly use MOVA software in conjunction with Maya software, for reasons unknown. Rearden does not plead that Defendants believed the use of MOVA software in conjunction with *four Maya files* would make Thanos, Ebony Maw, or the Hulk a draw for audiences, much less that such a limited use somehow drew consumers to either film. Any such allegation would be utterly implausible.

Rearden's vicarious liability claim fails.

### III.   FURTHER AMENDMENT WOULD BE FUTILE

Rearden was given "one final chance to amend its copyright infringement claim," to "cure the deficiencies" previously found by the Court. Dkt. 76 at 16. Rearden has not done so, for all of the reasons discussed. Rearden should not be given a further opportunity to amend.

After two full years, multiple amendments, and repeated revisions to its story about how MOVA was used and in connection with which characters, it is clear Rearden does not have a plausible factual basis to allege either direct or indirect copyright infringement.  Nor should Rearden be allowed more time to "discover" additional information through the asset-return process.  Rearden has used that excuse over and over again, only to return to the Court with no new information to support its claims.  Rearden continues to assert that it will receive more important documents in the asset-return process.  4AC ¶ 64.  But Rearden did *not* take up the Court's offer to request more time to file the 4AC.  Dkt. 76 at 17.  Rearden cannot now be heard to complain that the asset-return process may one day yield support for a plausible claim of copyright infringement.

## CONCLUSION

For the reasons set forth above, Rearden's claim for secondary copyright infringement should be dismissed with prejudice.

DATED:  May 16, 2024                MUNGER, TOLLES & OLSON LLP


By:  *Kelly M. Klaus*
      KELLY M. KLAUS


DATED:  May 16, 2024                WILMERHALE LLP


By:  *Taylor Gooch*
      TAYLOR GOOCH

*Attorneys for Defendants*