1  KELLY M. KLAUS (SBN 161091)
   kelly.klaus@mto.com
2  BLANCA F. YOUNG (SBN 217533)
   blanca.young@mto.com
3  JOHN L. SCHWAB (SBN 301386)
   john.schwab@mto.com
4  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, 27th Floor
5  San Francisco, California 94105-2907
   Telephone:     (415) 512-4000
6  Facsimile:     (415) 512-4077

7  SONAL N. MEHTA (SBN 222086)
   Sonal.Mehta@wilmerhale.com
8  WILMER CUTLER PICKERING
      HALE AND DORR LLP
9  2600 El Camino Real, Suite 400
   Palo Alto, California 94306
10 Telephone:     (650) 858-6000
   Facsimile:     (650) 858-6100
11
   JOSEPH TAYLOR GOOCH (SBN 294282)
12 Taylor.Gooch@wilmerhale.com
   WILMER CUTLER PICKERING
13    HALE AND DORR LLP
   50 California St., Suite 3600
14 San Francisco, California 94111
   Telephone:     (628) 235-1000
15 Facsimile:     (628) 235-1001

16 *Attorneys for Defendants*

17                    UNITED STATES DISTRICT COURT

18            NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| 19  REARDEN LLC et al., | Case No.    4:22-cv-02464-JST |
| 20          Plaintiffs, | **NOTICE OF MOTION AND MOTION TO DISMISS IN PART PLAINTIFFS' FIFTH AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 21     vs. | |
| 22  TWDC ENTERPRISES 18 CORP. f/k/a THE WALT DISNEY COMPANY, et al., | |
| 23          Defendants. | |
| 24 | Date:   May 22, 2025<br>Time:   2:00 p.m.<br>Judge:  Hon. Jon S. Tigar<br>Ctrm.:  6 (2nd Floor) |
| 25 | |

**TABLE OF CONTENTS**

**Page**

I.  BACKGROUND ...................................................................................................................2

    A.  The Second Amended Complaint ("SAC") ............................................................2

    B.  The Third Amended Complaint ("TAC") ...............................................................3

    C.  The Fourth Amended Complaint ("4AC") ..............................................................3

    D.  The Fifth Amended Complaint ("5AC") .................................................................4

STANDARD OF REVIEW ........................................................................................................5

ARGUMENT ...............................................................................................................................5

II. REARDEN STILL FAILS TO PLAUSIBLY ALLEGE THAT DEFENDANTS INDIRECTLY INFRINGED ...............................................................................................5

    A.  Rearden Has Not Expanded Its Direct Infringement Allegations ............................5

    B.  Rearden Still Does Not Plausibly Allege Contributory Copyright Infringement ............................................................................................................7

        1.  Rearden Still Does Not Plausibly Plead Knowledge ....................................7

        2.  Rearden Still Does Not Plead That Material Contribution or Inducement ....................................................................................................8

    C.  Rearden Still Fails To Plausibly Allege Vicarious Liability .................................10

        1.  Rearden Still Fails To Plausibly Allege A Legal Right To Stop The Infringing Conduct And The Practical Ability To Do So ...........................11

        2.  Rearden Still Fails To Plausibly Allege A Direct Financial Benefit ............12

CONCLUSION ..........................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................5

*Kilina Am., Inc. v. SA & PW, Inc.*,
    No. CV 19-03786-CJC, 2019 WL 8685066 (C.D. Cal. Aug. 27, 2019) ...................................11

*Kourtis v. Cameron*,
    419 F.3d 989 (9th Cir. 2005) .....................................................................................................9

*Luvdarts, LLC v. AT & T Mobility, LLC*
    (9th Cir. 2013) 710 F.3d 1068 ...............................................................................................7, 8

*Menzel v. Scholastic, Inc.*,
    No. 17-cv-05499-EMC, 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ....................................5

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) .................................................................................................11

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) .....................................................................................................9

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) ...............................................................................................7, 12

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................1, 5

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on May 22, 2025, at 2:00p.m., or as soon thereafter as the matter may be heard, in Courtroom 6 (2nd Floor) of the above-captioned Court, located at 1301 Clay Street, Oakland, CA 94612, Defendants (or "Disney") will and hereby do move the Court for an Order dismissing in part Plaintiffs' (or "Rearden") Fifth Amended Complaint (Dkt. 90) ("5AC"). Specifically, Defendants move the Court to dismiss the 5AC's First Claim for Relief, for contributory and vicarious copyright infringement, for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6). This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; all other materials supporting this Motion or the Reply; all pleadings on file; and any other matter submitted prior to or at the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

After twice dismissing Rearden's secondary copyright infringement claims for failing to allege even plausibly any underlying acts of direct infringement, the Court found that Rearden's Fourth Amended Complaint failed to plausibly allege either contributory or vicarious copyright liability. The Court held that Rearden had not plausibly alleged that Defendants knew about or had the practical ability to control DD3's allegedly infringing creation of just *four* Maya files. Those were the only acts of direct infringement that Rearden had been able to plausibly allege after having had multiple opportunities over nearly two years to amend and after having had the opportunity to review thousands of files returned during a multi-year asset-return from DD3. As the Court put it: "[t]he facts as alleged in the 4AC—that among millions of files reviewed by DD3 over the course of many years, Rearden has only managed to identify four files that were plausibly created using MOVA—simply do[] not support a plausible inference that [Defendants] would have had the practical ability to identify or control these limited instances of direct infringement" or that Defendants "had actual or constructive knowledge of these limited instances of infringement." Dkt. 87 at 11-12, 14. The Court gave Rearden one final chance to plausibly allege the elements of indirect infringement.

Rearden once again has failed to plausibly allege the core elements of its indirect infringement claims. The 5AC's new allegations say little about either *Avengers: Infinity War* or

*Avengers: Endgame*, the two films that have been the centerpiece of Rearden's complaint from the outset. Incredibly, the lion's share of the 5AC's new allegations focus on *Beauty and the Beast* (*BATB*)—the movie that was the subject of years of prior litigation and a jury trial. The 5AC attempts to plead that Defendants directed DD3 to use MOVA to complete *BATB* after this Court had entered a preliminary injunction prohibiting DD3 from using MOVA. From this, Rearden asks the Court to infer that if Defendants were willing to direct DD3 to violate the injunction to perform work on *BATB*, Defendants would have issued the same directive for the two *Avengers* films. Rearden's conjecture that Defendants believed MOVA was so indispensable that they would have ordered DD3 to violate a federal court injunction has been wildly implausible since Rearden first raised it nearly a decade ago. At this juncture, however, Rearden's current attempt to litigate this contention fails for an even more basic reason: Rearden *already litigated* its claim that DD3 used MOVA post-injunction for *BATB*, and Rearden conclusively lost that claim. On summary judgment in *Rearden I*, the Court found Rearden failed to introduce any evidence that DD3 used MOVA for any shot in *BATB* after the date of the injunction. Rearden cannot relitigate that issue now.

The fact that Rearden has used its fifth opportunity to amend to plead a theory that it has already litigated and lost establishes beyond any doubt that Rearden lacks a plausible basis to allege secondary infringement and cannot amend to save those claims. The 5AC's secondary copyright claims should be dismissed, with prejudice.

I.   **BACKGROUND**

The Court has exhaustively considered multiple versions of Rearden's copyright claims. This section summarizes only briefly the aspects of Rearden's prior complaints, and the Court's dismissal orders, that are relevant to this Motion.

   A.   **The Second Amended Complaint ("SAC")**

Rearden filed its SAC on September 26, 2022, alleging copyright infringement in the creation of Thanos, the character that Rearden claimed was the "center[]" of *Infinity War* and *Endgame*, "two of the highest grossing movies of all time" Dkt. 46-1 ¶¶ 1-2. On February 21, 2023, the Court dismissed that claim for multiple reasons, including that the mere appearance of the word 'mova' in documents that Rearden alleged were "produced by DD3 in collateral litigation"

was "insufficient to support a reasonable inference that MOVA was operated 'for facial captures or for processing captures into output works.'" Dkt. 54 at 6. In the years and amendments since, Rearden has moved away from adding new allegations about Thanos, and instead focused on different characters.

### B. The Third Amended Complaint ("TAC")

Rearden filed the TAC on May 24, 2023—after requesting and receiving multiple extensions that gave it months to file an amended complaint. *See* Dkts. 60-62. The TAC added seven paragraphs of allegations asserting that MOVA software was used to create *not Thanos* but two *different* characters from *Infinity War* and *Endgame*: the Hulk and Ebony Maw. On March 21, 2024, the Court again dismissed the copyright claim. Dkt. 76 at 7.

As to the Hulk claim, the Court found that Rearden's allegations regarding a Maya file purportedly showing an image of Mark Ruffalo did not plausibly allege MOVA's use to capture Mr. Ruffalo's performance in connection with either *Infinity War* or *Endgame*. Dkt. 76 at 5-6.`

Rearden based its Ebony Maw claim on a screenshot of a different Maya file. The Court held that "[a]llegations that a Maya file of the Ebony Maw character used the word 'mova' in its naming conventions, without more, is insufficient to establish a reasonable inference that the file itself contained MOVA source code, or that DD3's Masquerade software copied 'substantial amounts' of MOVA source code." Dkt. 76 at 7.

The Court granted Rearden "one final chance to amend" because Rearden represented that it "still has not received documents in DD3's possession from the Ownership Litigation that could show additional relevant acts of direct infringement." Dkt. 76 at 16.

### C. The Fourth Amended Complaint ("4AC")

Rearden filed the 4AC on April 11, 2024. Like the TAC, the 4AC contained no new allegations regarding Thanos. The 4AC also relied on the same Hulk and Ebony Maw files that underlay its claims in the TAC.

On December 20, 2024, the Court again dismissed the copyright claims. It found that Rearden had stated a claim of direct infringement by DD3, but only as to (1) the three files created by a third party program called Maya and alleged to contain images of the actor Mark Ruffalo

("Ruffalo Maya Files") and (2) the one Maya file alleged to contain an image of the character Ebony Maw ("Ebony Maw Maya File"). Dkt. 87.

The Court held that Rearden's more sweeping allegations of direct infringement—that "DD3 used MOVA extensively to animate characters during production of *Avengers: Infinity War* and *Avengers: Endgame* and/or that DD3 copied substantial amounts of MOVA source code into its own Masquerade facial motion capture software"—were not "plausible in view of the facts plead in the 4AC." Dkt. 87 at 8. In particular, those claims of sweeping infringement were implausible given that Rearden could only identify four allegedly infringing files "among the thousands of files it has received and millions that DisputeSoft has reviewed." *Id.* at 9.

The Court also found implausible Rearden's allegations of indirect infringement. As to contributory infringement, the Court held that (1) "in light of the limited scope of Rearden's direct infringement allegations, it is not plausible that Disney had actual or constructive knowledge of these limited instances of infringement, merely by virtue of its receipt *generally* of elements and work[s] in progress" and (2) "the bare allegations that Disney hired individuals who had experience working with MOVA in the past does not suffice to plead that Disney 'substantially assist[ed]' DD3's purported direct infringement." Dkt. 87 at 11-12.

As to vicarious liability, the Court held that "[t]he facts as alleged in the 4AC—that among millions of files reviewed by DD3 over the course of many years, Rearden has only managed to identify four files that were plausibly created using MOVA—simply does not support a plausible inference that [Defendants] would have had the practical ability to identify or control these limited instances of direct infringement." Dkt. 87 at 14.

The Court granted Rearden "one more opportunity to remedy" the "inadequacies in Rearden's *secondary* infringement allegations." Dkt. 87 at 15.

### D. The Fifth Amended Complaint ("5AC")

The 5AC adds 37 new paragraphs of allegations, 24 of which are pled in whole or in part on information and belief. 5AC ¶¶ 38-39, 41-42, 44-47, 56, 59-60, 88-89, 93-101. The only allegations *not* pled on information and belief are those concerning Orders of this Court in prior cases, including

Rearden's first lawsuit against Disney entities, Case No. 4:17-cv-04006-JST, ("*Rearden I*"), and Rearden's case against DD3. *Id.* ¶¶ 40, 43, 48-55, 57-58, 90-92

The 5AC does not allege any new evidence of infringement. Rearden continues to rely solely on the three Ruffalo Maya Files and one Ebony Maw Maya File as evidence of direct infringement.

Instead, the 5AC's new allegations focus almost entirely on claims about *BATB*, which was the subject of *Rearden I*. The 5AC attempts to resuscitate the argument that Defendants directed DD3 to use MOVA on *BATB* after this Court's issued an injunction barring DD3 from doing so, and then asks that Court to infer that Defendants must have done likewise with respect to *Infinity War* and *Endgame*. 5AC ¶¶ 44-60, 90-101.

Rearden does not acknowledge in the 5AC that it already litigated its "Disney-ordered-DD3-to-violate-the-injunction" theory in *Rearden I*, or that this Court granted the *Rearden I* defendants summary judgment when Rearden failed to "offer any argument in opposition" or "identify any evidence" to contradict the defendants' evidence that they "did not use in [*BATB*] any shots prepared by DD3 using MOVA" after the issuance of the injunction. *Rearden I*, Dkt. 569 at 12 (stipulated redacted version); *see also Rearden I,* Dkt. 573 (ordering stipulated redacted version to be docketed).

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, Rearden must allege facts that establish its claims are plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "An allegation made on information and belief must still be based on factual information that makes the inference of culpability plausible." *Menzel v. Scholastic, Inc.*, No. 17-cv-05499-EMC, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018) (quotations omitted).

## ARGUMENT

### II. REARDEN STILL FAILS TO PLAUSIBLY ALLEGE THAT DEFENDANTS INDIRECTLY INFRINGED

#### A. Rearden Has Not Expanded Its Direct Infringement Allegations

While the Court found that Rearden plausibly pled direct infringement by DD3 with respect to the three Ruffalo Maya Files and the Ebony Maw Maya File, it found implausible Rearden's allegations that "DD3 used MOVA extensively to animate characters during production of" *Infinity*

*War* and *Endgame* "and/or that DD3 copied substantial amounts of MOVA source code into its own Masquerade facial motion capture software such that Masquerade is either an unauthorized copy or unauthorized derivative work of MOVA." Dkt. 87 at 8.

The 5AC concedes that Rearden "cannot currently identify" any additional instances of supposed direct infringement that would make either of Rearden's broader infringement theories plausible. 5AC ¶ 88. That concession, alone, defeats Rearden's attempt to plead secondary infringement. As this Court has held, Rearden's broader allegations of infringement "are integral to Rearden's secondary infringement claims." Dkt. 87 at 8. Rearden's inability to plausibly plead sweeping infringement makes it implausible that Defendants had knowledge of, or an ability to control, infringement relating to the "few files that reflect plausible direct infringement by DD3." *Id.* at 11. Rearden admits that it cannot make any further factual allegations supporting its broader infringement theories. Its secondary infringement claims should once again be dismissed for this reason.

Rearden suggests that the Court should simply assume that evidence of widespread infringement exists somewhere. It argues, for the first time, that the reason it cannot plead additional facts supporting direct infringement by DD3 is that the *SHST* asset-return process is too "narrow." 5AC ¶ 88. But Rearden has pled that it has in its possession at least many thousands of files returned by DisputeSoft, out of millions that DisputeSoft reviewed. Dk. 87 at 11. Indeed, this Court has previously granted leave to amend based on Rearden's claim that the asset return process could result in additional evidence of DD3's supposed direct infringement. Dkt. 76 at 16 (dismissing Third Amended Complaint and granting leave to amend because Rearden represented that it "still has not received documents in DD3's possession from the Ownership Litigation that could show additional relevant acts of direct infringement.").

Rearden has had years to raise this argument, and did not. It has had years to file a motion with the Court to expand the asset return process, and did not. Instead, it has spent those years repeatedly arguing that it should be given more time to amend because the asset return process would generate evidence of infringement. It is implausible that the same return process is suddenly too "narrow" to capture what Rearden wishes the Court to believe was widespread infringement.

The Court should decline Rearden's invitation to infer the widespread infringement that Rearden cannot plausibly plead.

### B. Rearden Still Does Not Plausibly Allege Contributory Copyright Infringement

The 5AC does not address any of the failings identified in this Court's Order dismissing the 4AC's contributory infringement claim, and therefore does not plausibly plead that Defendants had knowledge of DD3's alleged infringement, or "either (a) materially contribute[d] to or (b) induce[d]" that infringement." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 745 (9th Cir. 2019) (citation and internal quotation marks omitted).

#### 1. Rearden Still Does Not Plausibly Plead Knowledge

The 5AC's new allegations still do not plausibly plead that Defendants had "the requisite knowledge of the specific acts of infringement" at issue—the three Ruffalo files and single Ebony Maw file—rather than mere "'generalized knowledge . . . of the possibility of infringement.'" Dkt. 87 at 11 (quoting *Luvdarts, LLC v. AT & T Mobility, LLC* (9th Cir. 2013) 710 F.3d 1068, 1072).

*First,* Rearden alleges that the direct infringement relating to the Ruffalo Maya Files occurred in 2016. 5AC ¶ 75. That is before this Court found that Rearden, and not DD3, owned MOVA. As this Court has repeatedly held, including in *Rearden I*, Defendants could not have had knowledge that DD3's conduct was infringing until this Court decided the ownership dispute on April 11, 2017, nearly a year after the supposed creation date of the Ruffalo files. *See, e.g*, *Rearden I*, Dkt. 569 (granting summary judgment on Rearden's contributory infringement claim on this basis). The 5AC likewise fails to plead knowledge of the alleged Ruffalo Maya Files infringement.

*Second,* as this Court has already held, it is not plausible that Defendants had knowledge of the "few files that reflect plausible direct infringement by DD3" absent an allegation that those specific files "were ever provided to Disney such that Disney would have had the opportunity to inspect them." Dkt. 87 at 11. The 5AC contains no such allegation. Instead, Rearden pleads that the Ruffalo Maya Files and Ebony Maw Maya File are "on information and belief … among the types of files that would routinely be reviewed by studio representatives" and from that claims, on "information and belief," that these particular files were reviewed by Defendants. 5AC ¶¶ 98-99.

Rearden's new allegations are simply a nesting doll of "information and belief" assertions, without a single, straightforward factual allegation to support its claim to a wide-ranging conspiracy to use MOVA, an outdated facial capture technology. Even taken as true, the information and belief pleading that these are "among the types of files" typically provided to studios, 5AC ¶ 98, does not support a plausible inference that these specific files were "provided to Disney," Dkt. 87 at 11. As Rearden's founder and CEO stated, under oath, facial motion capture work "would have consisted of many terabytes of files." *Rearden 1*, Dkt. 68 ¶ 19. The 5AC provides no reason to infer that the four files at issue would have been provided to Defendants, rather than some other set out of the "many terabytes of files." Put differently, the 5AC does not and cannot allege either that these four files were in fact reviewed by Defendants, or that Defendants or any other studio routinely reviews every single computer file created by third-party vendors in the course of animating a film character. That dooms Rearden's attempt to plead knowledge.

*Third*, perhaps recognizing that it cannot plead knowledge, Rearden half-heartedly tries to allege that Defendants were willfully blind to DD3's infringement. But Rearden fails to plead that Defendants "(1) subjectively believed that infringement was likely occurring" or "that they (2) took deliberate actions to avoid learning about the infringement." *Luvdarts, LLC,* 710 F.3d at 1073. Nothing in the 5AC plausibly suggests that Defendants subjectively believed DD3 created a handful of infringing files, and the 5AC makes no attempt, of any sort, to identify any action Defendants took to avoid learning of those scant few files.

Rearden has not addressed the deficiencies in the 4AC's knowledge allegations and the 5AC's contributory infringement claim should be dismissed on this basis alone.

### 2. Rearden Still Does Not Plead That Material Contribution or Inducement

Rearden has also failed to address this Court's bases for finding that the 4AC "failed to plausibly allege that Disney had . . . materially contributed and/or induced" DD3's alleged infringement. Dkt. 87 at 12. As to material contribution, the Court found that the 4AC's "allegations that Disney hired individuals who had experience working with MOVA in the past does not suffice . . . ." failed to establish a material contribution. *Id.* The 5AC adds no new allegations on this front,

and therefore again fails to plead material contribution.

As to inducement, the Court held that Rearden had not alleged any facts to support its "speculation that Disney contractually barred DD3 from using MOVA as merely misdirection" and in fact "*instructed* DD3 to" infringe. Dkt. 87 at 12. The 5AC tries to address this failing with a slew of allegations relating to *BATB* that ask the Court to infer that (1) Defendants directed DD3 to use MOVA for *BATB* after this Court issued its injunction because "no adequate alternative to MOVA existed for the quality of facial capture it required for *Beauty and the Beast*" 5AC ¶ 60, and (2) Defendants likewise made the same decision with respect to *Infinity War* to avoid "the risk of the movie failing due to poor quality facial animation," *Id.* ¶ 97. The argument is based on speculation piled upon speculation, with no factual allegations to support it.

*First,* Rearden is barred from relitigating the issue of whether any shots in *BATB* were created using MOVA after the Court issued its injunction. Collateral estoppel "bars relitigation of issues adjudicated in an earlier proceeding if three requirements are met: '(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.'" *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (quoting *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005)).

Collateral estoppel plainly applies here. When the *Rearden I* defendants moved for summary judgment, Rearden could not "identify any evidence" to contradict the evidence that defendants "did not use in [*BATB*] any shots prepared by DD3 using MOVA" after the issuance of the injunction. *Rearden I*, Dkt. 569 at 12. The 5AC does not even acknowledge that ruling. But it is settled from *Rearden I*, and Rearden may not relitigate anew, its claim that MOVA was used after the injunction for any of the shots in *BATB*.

The fact that MOVA was not so used for *BATB* eviscerates Rearden's theory that Defendants directed DD3 to continue using MOVA for *BATB*, despite the injunction, because no alternative existed. Obviously an alternative existed because *BATB* was finished and did not include shots created with MOVA after the injunction. It is not plausible that Defendants directed DD3 to violate

-9-

a court injunction *even though doing so was unnecessary*. And it is likewise not plausible that Defendants would have continued directing DD3 to violate the injunction in order to create four Maya files relating to two *Avengers* characters.

*Second,* Rearden's own pleadings contradict its allegation that MOVA was the only facial motion capture system that could be used on *Infinity War* or *Endgame*, 5AC ¶ 97, or "that the only high-resolution facial capture technology DD3 possessed was MOVA," *id.* ¶ 96. In fact, Rearden pleads that Defendants have their own propriety facial motion capture system, MEDUSA, and have used that in connection with a wide range of films and television shows. *See, e.g., id.* ¶¶ 107-08, 112. Rearden likewise pleads that DD3 has its own proprietary system, called Masquerade. *See, e.g., id.* ¶¶ 72, 84. While Rearden alleges that Masquerade is merely MOVA in disguise, the Court has already found that assertion implausible, and nothing in the 5AC makes it any more plausible. *See supra* § II.A.

*Third,* Rearden's allegations are implausible because it has not alleged extensive use of MOVA. If Rearden were correct that MOVA was the only high-quality motion capture technology available (and it is not, as this Court already knows from the *Rearden I* litigation) then it presumably would have been used extensively in both *Infinity War* and *Endgame*. For example, Rearden pleads that both films were "centered" on Thanos. 5AC ¶ 2. But it has utterly failed to plead infringement in the creation of that character. And it is wholly implausible to believe that Defendants used some inferior technology for the "center" of the films, but directed DD3 to use MOVA for two less prominent characters. Nor is it plausible that Defendants would have directed DD3 to do so in order to create less than a handful of Maya files. Rearden's inability to plead extensive use dooms its attempt to plead that Defendants knowingly violated a court injunction to ensure MOVA was used in their films.

Rearden's new allegations relating to inducement are barred by collateral estoppel, contradicted by its own pleadings, and entirely implausible. The contributory infringement claim should be dismissed on this basis, as well.

### C.     Rearden Still Fails To Plausibly Allege Vicarious Liability

Rearden fails to allege either that Defendants (1) had the requisite control, meaning both "a

legal right to stop or limit the directly infringing conduct" and "the practical ability to do so," and (2) "derive[d] a direct financial benefit from the direct infringement." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007).

### 1. Rearden Still Fails To Plausibly Allege A Legal Right To Stop The Infringing Conduct And The Practical Ability To Do So

The Court held that the 4AC did not plausibly allege either a legal right to stop DD3's alleged infringement or a practical ability to prevent that infringement. The 5AC fails to address either deficiency.

*Legal Right.* Rearden again points to the contracts between DD3 and Defendants relating to *Endgame* and *Infinity War*. 5AC ¶¶ 98, 120. But the mere fact that a party enters into a terminable contract is insufficient to establish right to control. *See Amazon.com*, 508 F.3d at 1173–74 (right to "terminate partnerships" did not satisfy "control" element); *Kilina Am., Inc. v. SA & PW, Inc.*, No. CV 19-03786-CJC (KSx), 2019 WL 8685066, at *2 (C.D. Cal. Aug. 27, 2019) (such a theory of control is "highly indirect and attenuated" and "foreclosed by precedent"). Here, the theory is even *more* "indirect and attenuated" because the contracts at issue are *not* for DD3 to provide "facial performance capture[s] services" and do *not* hire DD3 to use MOVA.[1] To the contrary, the contracts expressly forbade DD3 from using MOVA. See Dkt. 42-1 at Exs. 1, 2.

*Practical Ability.* The Court previously found that the 4AC failed to allege practical ability because (1) "Rearden's arguments as to practical ability are predicated upon its allegations that DD3's use of MOVA was either extensive, or that DD3 effectively copied MOVA into Masquerade" and (2) "the Court has already rejected Rearden's allegations of such extensive direct infringement as implausible." Dkt. 87 at 14.

The same result should follow here: it is not plausible that Defendants "would have had the practical ability to identify or control [the] limited instances of direct infringement" pled by Rearden. Dkt. 87 at 14. Rearden has pled no new instances of direct infringement, *supra* § II.A, and made no

---

[1] Defendants note that, despite the fact that Rearden has had these contracts in its possession for years, and the contracts very clearly do not call for DD3 to perform facial motion captures services using MOVA, Rearden has refused to amend its allegation to the contrary, *see* 5AC ¶ 120, meaning that it continues to advance at least one allegation that it knows is false before this Court.

new allegations that plausibly suggest that Defendants in fact reviewed the four Maya files for which Rearden has alleged infringement, *supra* § II.B.1. It remains the case that "ferreting out these few instances [of alleged direct infringement] in the entire production of the two *Avengers* films would be 'beyond hunting for a needle in a haystack.'" Dkt. 87 at 14 (quoting *VHT, Inc.*, 918 F.3d at 746). Rearden has therefore once again failed to allege a practical ability to control, and its vicarious liability claim must be dismissed.

### 2. Rearden Still Fails To Plausibly Allege A Direct Financial Benefit

Rearden still has not plausibly pled a direct financial benefit, nor could it do so. After years of amendments in this case, litigation in related cases, and millions of reviewed files in the asset return process, Rearden has only managed to plead that four individual Maya files may have infringed. It is not remotely plausible that Defendants received a direct financial benefit from those four files, especially given that Rearden does not and cannot plead that even one of those files was actually used in *Infinity War* or *Endgame*. Rearden's vicarious liability claim should be dismissed for this reason, as well.

### CONCLUSION

Rearden filed this case almost three years ago. Rearden has now failed on five separate occasions to state a plausible claim for contributory or vicarious copyright infringement. Rearden's secondary copyright infringement claims should be dismissed with prejudice.

DATED: March 3, 2025                                MUNGER, TOLLES & OLSON LLP

By:     /s/ Kelly M. Klaus
        KELLY M. KLAUS

|  |  |  |
|---|---|---|
| DATED: March 3, 2025 | WILMERHALE LLP | |
| | By: */s/ Taylor Gooch* | |
| | TAYLOR GOOCH | |
| | *Attorneys for Defendants* | |

-13-

MOTION TO DISMISS FIFTH AMENDED COMPLAINT
NO. 4:22-CV-02464