UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REARDEN LLC, et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>TWDC ENTERPRISES 18 CORP., et al.,<br><br>      Defendants. | Case No. 22-cv-02464-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIFTH AMENDED COMPLAINT**<br><br>Re: ECF No. 94 |

Before the Court is Defendants TWDC Enterprises 18 Corp. f/k/a The Walt Disney Company, Disney Content Services Co., Inc. d/b/a Disney Pictures Productions, LLC; Walt Disney Pictures; Marvel Studios, LLC; MVL Film Finance LLC; Lucasfilm Ltd. LLC; and Disney Studio Production Services Co., LLC's (collectively, "Disney") motion to dismiss Plaintiffs Rearden LLC and Rearden MOVA LLC's (collectively, "Rearden") Fifth Amended Complaint ("5AC"). ECF No. 94 ("Mot."). The Court will grant the motion in part and deny the motion in part.

## I. BACKGROUND

The factual and procedural background of this case is summarized in greater detail in this Court's prior orders. *See* ECF Nos. 54, 76, 87. This case is the latest in a longstanding controversy regarding ownership and use of the MOVA Contour Reality Capture program ("MOVA"), which is used to capture high-resolution 3D models of a performer's face and facial movements, in order to create facial animations for use in the production of movies. ECF No. 90 ("5AC") ¶¶ 28. This Court initially adjudicated a dispute between Plaintiff Rearden LLC and Shenzhenshi Haitiecheng Science and Technology Company ("SHST") concerning the ownership of equipment and intellectual property associated with MOVA ("Ownership Litigation").

*Shenzhenshi Haitiecheng Sci. and Tech. Co., LTD v. Rearden LLC ("SHST")*, No. 15-cv-00797-JST, 2017 WL 3446585, at *1 (N.D. Cal. Aug. 11, 2017), *aff'd*, 823 F. App'x 455 (9th Cir. 2020). SHST is a Chinese entity associated with Digital Domain 3.0, Inc. ("DD3"), a visual effects company whose alleged conduct lies at the heart of the case at hand. In the Ownership Litigation, the Court issued a preliminary injunction prohibiting the sale, use, movement, concealment, transfer, or disposal of MOVA Assets by SHST or Virtual Global Holdings Limited ("VGH") – an entity related to DD3 and SHST. *See Virtue Glob. Holdings Ltd. v. Rearden LLC*, No. 15-cv-00797-JST, 2016 WL 9045855, at *2, *10 (N.D. Cal. June 17, 2016). After a bench trial, the Court dissolved the injunction and ruled that "Rearden, not . . . DD3, owns and at all relevant times has owned the MOVA Assets." *SHST*, 2017 WL 3446585, at *9. The Court further ordered the return of the assets to Rearden, which included "MOVA Software, Source code, and Output files." Order Regarding the Return of MOVA Assets 1, *SHST*, No. 15-cv-00797-JST (N.D. Cal. Oct. 2, 2017), ECF No. 449. The Court appointed a special master to supervise the return of those assets, and the special master, in turn, appointed DisputeSoft as a forensic expert to oversee this process. *See* Order Appointing Hon. Edward A. Infante (Ret.) as Special Master Pursuant to Federal Rule of Civil Procedure 53, *SHST*, No. 15-cv-00797-JST (N.D. Cal. June 17, 2019), ECF No. 529; Special Master's Order Appointing Forensic Expert *SHST* No. 15-cv-00797-JST (N.D. Cal. Aug. 20, 2019), ECF No. 534.

In this case, Rearden brings claims of copyright and patent infringement. As relevant to this order, Rearden alleges that Disney contracted with DD3 for facial performance capture services and output works for the films *Avengers: Infinity War* and *Avengers: Endgame*, and that following the issuance of the preliminary injunction in the Ownership Litigation, DD3 performed these services using MOVA, including animating the CG characters Thanos, Ebony Maw, and the Hulk. *See* 5AC ¶¶ 113–29. It alleges that Disney is accordingly liable for vicarious and contributory copyright infringement. *Id.*

This is Rearden's fifth attempt at alleging a copyright infringement claim. The Court previously dismissed Rearden's claim for vicarious and contributory copyright infringement, finding the Fourth Amended Complaint ("4AC") "failed to plausibly allege that Disney had either

2

the requisite knowledge of DD3's purported direct infringement, or materially contributed and/or induced such infringement" and did not allege facts to "support a plausible inference that Disney would have the practical ability to identify or control" DD3's alleged direct infringement. ECF No. 87 ("Order") at 9–14. In dismissing that claim, the Court granted Rearden "one more opportunity to remedy th[e] deficiencies" in Rearden's secondary infringement allegations. *Id.* at 14–15. Rearden timely filed its 5AC on January 24, 2025. Disney once again moves to dismiss Rearden's claim for vicarious and contributory copyright infringement.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations need not be detailed, but the facts must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). In so doing, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in

opposition to a defendant's motion to dismiss." *Schneider v. California Dep't of Corr.,* 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis omitted).  However, the Court "may . . . consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).  Finally, a plaintiff may "plead[] facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 603 F.3d 110, 120 (2d Cir. 2010)).

## III. DISCUSSION

### A. Direct Copyright Infringement

As explained in the Court's prior order, "[i]n order to bring a claim against Disney for secondary copyright infringement, Rearden must plead facts sufficient to plausibly allege direct copyright infringement by . . . DD3."  Order at 4.  The Court previously determined that the 4AC "sufficiently allege[d] that DD3 directly infringed the MOVA copyright by using MOVA to create certain files such as the Ruffalo Maya Files or Ebony Maw Maya File during production of Avengers: Infinity War and Avengers: Endgame[,]" but did not plausibly allege that "DD3 used MOVA extensively during production of those movies, or that DD3 copied MOVA source code to create its Masquerade software." *Id*. at 9.  Disney argues that Rearden's 5AC fails to remedy these deficiencies.

As pleaded in the 5AC, Rearden believes it "will likely have evidentiary support after a reasonable opportunity for further investigation and discovery" to show that "DD3 created many more Maya files that, like the Ruffalo Maya files and Ebony May Maya Files, show use of MOVA for creation of at least Thanos, Ebony Maw, and the Hulk for use in *Avengers: Infinity War* and *Avengers: End Game*." 5AC ¶ 88.  Rearden represents that it "cannot currently identify [] additional Maya files . . . because DisputeSoft's search for and return of files in connection with the *SHST* Litigation was performed under specific and narrow criteria . . . that were not directed at

4

or likely to obtain files relevant to this litigation; rather, the Ruffalo Maya Files and Ebony Maw Maya Files were attached to other files that DisputeSoft marked for return based on the Return Order enforcement criteria." *Id*. With respect to DD3's Masquerade software, Rearden alleges that "even if DD3's Masquerade software contained substantial amounts of MOVA source code, DisputeSoft's return process would not necessarily have identified MOVA source code if DD3 had made any effort to obscure such use, and on information and belief, DD3 did make exactly such efforts." *Id*. ¶ 89. Rearden alleges "on information and belief, [that] on October 10, 2017 (while *Avengers: Infinity War* and *Avengers: Endgame* were in production, and eight days after the October 2, 2017 SHST Return Order issued), DD3 deliberately changed the name of some MOVA Assets illegally in its possession to 'AVOM' . . . to thwart forensic textual searches . . . from discovering DD3's ongoing MOVA use . . . ." *Id*. Disney argues that these allegations are insufficient to "infer [] widespread infringement . . . ." Mot. at 10.

      The Court agrees with Disney. The Court first notes that Rearden's allegations regarding DD3's direct infringement are based entirely "on information and belief." *See* 5AC ¶¶ 88–89. Although "[t]he Ninth Circuit has held that the *Iqbal/Twombly* plausibility standard does not prevent a plaintiff from pleading facts alleged upon information and belief[,]" "[a]n allegation made on information and belief must still be 'based on factual information that makes the inference of culpability plausible,' although a court may take into account whether 'facts are peculiarly within the possession and control of the defendant.'" *Menzel v. Scholastic, Inc.*, No. 17-CV-05499-EMC, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018) (citation omitted). Here, Rearden's allegations are not "based on factual information that make[] the inference of culpability plausible." *Menzel*, 2018 WL 1400386, at *2. For example, even accepting as true the allegation that DisputeSoft's search criteria was "specific and narrow" and "not directed at or likely to obtain files relevant to this litigation[,]" that allegation alone does not give rise to a plausible inference that DD3 extensively used MOVA during the production of *Avengers: Infinity War* and *Avengers: Endgame*. Rearden does not provide any other factual basis to support this allegation. Without more, the Court does not find it plausible that DD3 extensively used MOVA during the production of *Avengers: Infinity War* and *Avengers: Endgame*.

5

The Court reaches the same conclusion with respect to DD3's alleged use of MOVA source code. Although the 5AC specifically identifies an instance in which DD3 renamed "some MOVA assets illegally in its possession to 'AVOM'" (5AC ¶ 89), this single instance does not provide a factual basis from which the Court can infer that DD3 *copied "substantial amounts" of MOVA's source code to create Masquerade. Id.* Accordingly, the Court reiterates its prior conclusion: "[T]he [5AC] sufficiently alleges that DD3 directly infringed the MOVA copyright by using MOVA to create certain files such as the Ruffalo Maya Files or Ebony Maw Maya File during production of *Avengers: Infinity War* and *Avengers: Endgame*[,]" but "the Court does not find plausible Rearden's conclusory allegations that these limited examples support the inference that DD3 used MOVA extensively during production of those movies, or that DD3 copied MOVA source code to create its Masquerade software." Order at 9.

### B.  Indirect Copyright Infringement

#### 1.  Contributory Infringement

To plead contributory infringement, a plaintiff must allege that the defendant "(1) ha[d] knowledge of another's infringement and (2) either (a) materially contribute[d] to or (b) induce[d] that infringement." *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007). The Court previously determined that the 4AC failed to "support a plausible inference that Disney knew or had reason to know of DD3's alleged acts of direct infringement[,]" as the 4AC only alleged that Disney (1) "had notice of the *SHST* preliminary injunction" and (2) "continued to use employees 'involved with MOVA Technology, including Greg LaSalle, Jonathan Berry, and Lucio Moser, to perform visual effects work on *Avengers: Infinity War* and [] *Avengers: Endgame*[.]'" Order at 10–11 (quoting 4AC ¶¶ 69–70, 85). Disney argues that the 5AC does not remedy the deficiencies identified in the Court's prior order, as the 5AC stills "do[es] not plausibly plead that [Disney] had 'the requisite knowledge of the specific acts of infringement' at issue—the three Ruffalo files and single Ebony Maw file . . . ." Mot. at 10.

##### a.  Actual or Constructive Knowledge

The 5AC sets forth several new paragraphs that purport to show Disney had knowledge of DD3's alleged infringement. 5AC ¶¶ 44–60, 88–101. These new allegations generally fall into

6

two categories: (1) allegations that DD3 used MOVA in connection with *BATB* post-injunction and Disney directed, or at least knew of, such use (*id*. ¶¶ 47–60, 90–97), and (2) allegations that Disney representatives reviewed the Ruffalo and Ebony Maw Maya files and "knew[] or should have known" that DD3 was using MOVA upon inspection of the files (*id*. ¶¶ 98–100). In essence, Rearden alleges that DD3 used MOVA to complete its work on *BATB* post-injunction, Disney did not pay DD3 for its *BATB* MOVA services "because Disney knew DD3 was illegally using MOVA software post-[I]njunction in *BATB*," and "as such, Disney knew DD3 would similarly provide illegal MOVA services for *Avengers: Infinity War* and *Avengers: Endgame*." *Id*. ¶ 95.

The Court finds these allegations, all pled on information and belief, are insufficient to plausibly allege that Disney had knowledge of DD3's alleged infringement. Rearden's theory of liability requires several jumps in logic. First, the Court must infer that DD3 illegally used MOVA post-injunction for its work in *BATB*. Then, the Court must infer that Disney directed, or at least knew, Rearden was using MOVA post-injunction for its work on *BATB*. Then, the Court must infer that Disney did not pay DD3 for its work on *BATB*, because Disney knew DD3 was using MOVA illegally. Finally, the Court must infer that Disney hired DD3 to work on *Avengers: Infinity War* and *Avengers: Endgame* knowing DD3 would once again use MOVA illegally. Rearden has failed to allege a factual basis on which the Court can draw any of these inferences.

The 5AC alleges that Disney "began ordering 'selects' (the MOVA facial capture takes that best match the actor's live action performance) after the entry of the [i]njunction, and continued to do so through at least July 12, 2016" and "the processing of those selects (unlawfully using MOVA software continued until at least September 14, 2016." 5AC ¶ 56; *see also id*. ¶¶ 57–60. Rearden argues that these allegations are sufficient to plausibly allege that Disney directed, or at least knew, DD3 was using MOVA post-injunction for its work on *BATB*. The Court does not agree. As an initial matter, Paragraphs 56 through 60 of the 5AC merely restate conclusory allegations and attorney argument about Disney's intent and purpose in ordering "selects." *Id*. For example, these paragraphs do not recite any factual allegations that suggest Disney "did not pay DD3, because Disney knew DD3 was using MOVA illegally." These paragraphs also do not recite any factual allegations that suggest Disney hired DD3 to work on

7

*Avengers: Infinity War* and *Avengers: Endgame* because it knew DD3 would "provide illegal MOVA services . . . ." *Id.* ¶ 95.

These allegations are further undermined by the record in Rearden's first case against Disney, Case No. 17-cv-4006 ("*Rearden I*"). In *Rearden I*, Rearden accused Disney of contributory infringement based on DD3's alleged use of MOVA in connection with its work on *BATB*. However, the Court granted summary judgment in favor of Disney on Rearden's contributory infringement claim, after Disney provided evidence that it "did not use any shots prepared by DD3 using MOVA" during *BATB* and Rearden failed to rebut Disney's evidence. *Rearden I*, ECF No. 569 at 12. Now, despite the fact that the Court already found *BATB* did not contain shots using MOVA, Rearden asks the Court to infer that Disney nevertheless directed DD3 to use MOVA during the production of *BATB*.[1] These allegations are implausible. More importantly, they do not provide a factual basis on which the Court can infer that Disney directed DD3 to continue using MOVA for *BATB*, or that Disney directed DD3 to use MOVA during *Avengers: Infinity War* or *Avengers: Endgame*.

The 5AC also alleges "on information and belief" that Disney "viewed the Ruffalo Maya [f]iles and Ebony Maw Maya [f]iles . . . for inspection during the production of *Avengers: Infinity War* and *Avengers: Endgame*[,]" because "based on [Rearden's] experience in working with studios with MOVA . . . the Ruffalo Maya [f]iles and Ebony Maw Maya [f]iles are among the types of files that would routinely be reviewed by studio representatives to inspect the progress of the work . . . ." 5AC ¶ 98. These allegations, too, are conclusory and devoid of any factual support. Even accepting as true Rearden's allegation that in its own experience working with studios with MOVA, studio representatives review similar types of files "to inspect the progress of the work," there is no factual basis from which the Court can infer that the Ruffalo and Ebony Maw Maya files were the "types of files that would routinely have been reviewed" ***by Disney representatives.*** 5AC ¶ 98. Accordingly, the Court finds the 5AC fails to plausibly allege that

---

[1] Even if the Court were to accept this conclusory allegation as true, the Court is not convinced that Disney's knowledge with respect to *BATB* would be a sufficient to suggest Disney's had knowledge of DD3's alleged use of MOVA for *Avengers: Infinity War* and *Avengers: Endgame*.

8

1 Disney knew of DD3's alleged infringement based on the Ruffalo and Ebony Maw Maya files.

### b. Willful Blindness

The 5AC alleges in the alternative that Disney was "willfully blind to DD3's continued use of MOVA." 5AC ¶ 93. The 5AC specifically alleges that Disney's "ordering of 'selects' for [*BATB*] . . . establishes [Disney's] . . . willful blindness of DD3's continued use of MOVA software despite the [i]njunction[,]" and that Disney's "willful blindness with respect to [*BATB*] is further evidenced by the contrast between [Disney's] post-[i]njunction conduct with respect to [*BATB*] and Columbia Pictures' post-[i]njunction conduct with respect to *Passengers* and *Blade Runner 2049*." *Id.* ¶¶ 93–94. The 5AC further alleges that "[o]n information and belief . . . the reason [Disney] either directed DD3 to use or continue to use MOVA . . . or were willfully blind to its continued use after the entry of the [i]njunction was because [Disney] knew that DD3 had no alternative to MOVA . . . ." *Id.* ¶ 97.

"To allege willful blindness, a plaintiff must allege the defendant '(1) subjectively believed that infringement was likely occurring' and '(2) took deliberate actions to avoid learning about the infringement.'" *Harrington*, 2021 WL 4033031, at *5. The 5AC fails to allege both. First, the 5AC does not plausibly allege that Disney "subjectively believed infringement was likely occurring." As explained above, Rearden's allegations that Disney directed DD3 to continue using MOVA for *BATB*, that Disney knew DD3 was continuing to use MOVA for *BATB*, or that Disney hired DD3 to work on *Avengers: Infinity War* and *Avengers: Endgame* because it knew DD3 would continue to illegally use MOVA are without any factual support. These allegations are therefore insufficient for the Court to plausibly infer that Disney "subjectively believed" DD3 was directly infringing the MOVA software based on the Ruffalo and Ebony Maw Maya files. The 5AC also does not plausibly allege that Disney "took deliberate actions to avoid learning" about DD3's alleged infringement. In fact, the 5AC makes no allegations suggesting that Disney took any deliberate action to avoid learning about the alleged infringement. The Court therefore finds that Rearden has failed to allege Disney was willfully blind to DD3's alleged infringement.

### c. Material Contribution and/or Inducement

Disney also argues that Rearden fails to allege material contribution and/or inducement.

9

1    Rearden counters that "the 5AC alleges that Disney contributed to and induced DD3's
2    infringement in connection with *Avengers* by directing DD3 to continue to use MOVA software
3    (or to continue to provide high resolution facial capture processing work on *Avengers*, knowing
4    DD3 had no high resolution facial capture processing alternative to MOVA software but
5    remaining willfully blind to its use), in order to ensure the timely completion of *Avengers* with the
6    required 3D facial performance quality." Opp. at 14.  But once again, Rearden allegations rest
7    entirely on (1) DD3's alleged use of MOVA in connection with *BATB,* and (2) Disney's alleged
8    direction, or knowledge, of such use.  *Id*. at 15 ("[T]he 5AC alleges . . . that Disney was aware that
9    the only high-resolution facial capture processing technology DD3 possessed as of August 2016
10   (when work began on *Avengers*) was MOVA software. [] The 5AC also alleges that DD3 charged
11   Disney nothing for its infringing MOVA services on *BATB*, because DD3 couldn't charge for
12   post-injunction illegal use of MOVA software, which was an inducement for Disney to hire DD3
13   to provide infringing MOVA services for *Avengers*.").  As the Court has explained throughout this
14   order, the allegations regarding DD3's use of MOVA in connection with *BATB* are conclusory and
15   without any factual support.  Moreover, as the Court already determined in *Rearden I*, Rearden
16   failed to adduce any evidence to rebut Disney's evidence that *BATB* did not use "any shots
17   prepared by DD3 using MOVA."  *Rearden I*, ECF No. 569 at 12.  It is implausible to suggest that
18   Disney materially contributed to, or induced, DD3's alleged use of MOVA in connection with
19   *BATB*, when Disney did not use "any shots prepared by DD3 using MOVA" in *BATB*.
20   Accordingly, the Court finds that Rearden has failed to Disney "materially contributed" or
21   "induced" DD3's alleged infringement of MOVA based on the Ruffalo and Ebony Maw Maya
22   files.

### 2.    Vicarious Infringement

24   To plead a vicarious liability claim, a plaintiff must allege that the defendant had "(1) the
25   right and ability to supervise the infringing conduct and (2) a direct financial interest in the
26   infringing activity."  *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019) (citation
27   omitted).  The first element requires 'both a legal right to stop or limit the directly infringing
28   conduct, as well as the practical ability to do so.'"  *Id*. (citation omitted).  Disney argues that the

10

5AC fails to allege both "the right and ability to supervise" and "a direct financial interest."

### a. Right and Ability to Supervise

Disney argues that the 5AC fails to allege that Disney had a "legal right to stop DD3's alleged infringement or a practical ability to prevent that infringement." Mot. at 14. First, Disney argues that the contracts between Disney and DD3 in connection with *Avengers: Infinity War* and *Avengers: Endgame* are insufficient to allege a legal right to stop DD3's alleged infringement, because "the mere fact that a party enters into a terminable contract is insufficient to establish a right to control." *Id*. Disney further argues that the "contracts at issue are not for DD3 to provide 'facial performance capture[s] services' and do not hire DD3 to use MOVA." *Id*. These arguments are not persuasive.

As pled in the 5AC, Disney "contracted with DD3 for facial performance capture services and output works using the Contour program for . . . *Avengers: Infinity War* and *Avengers: Endgame*[,]" and "[a]t all material times during DD3's performance . . . Disney . . . [was] in a position to police DD3 and/or had the right and ability to supervise and control DD3's performance."[2] 5AC ¶ 120. The 5AC specifically alleges that the contract between DD3 and Disney "grant[ed] [Disney] the unrestricted right to cancel 'any portion of the [s]ervices' provided by DD3" and "require[d] that DD3 submit elements and work in progress to the [p]roducer on at least a weekly basis[,]" and Disney was therefore "in a position to police all . . . infringing acts." *Id*. ¶ 125. The Court finds these allegations are sufficient to plausibly allege that Disney had the legal right to stop DD3's infringement and a practical ability to prevent such infringement. *See Rearden, LLC v. Walt Disney Pictures*, 152 F.4th 1058, 1069–70 (9th Cir. 2025) (finding a "jury could have reasonably concluded that, even in the absence of a specific reason to question DD3's authorization to use MOVA, Disney had the practical ability to investigate whether DD3 had the necessary rights to operate its core software " as the contract "clearly gave [Disney] all necessary

---

[2] Disney argues that its contracts with DD3 "very clearly d[id] not call for DD3 to perform facial motion captures services using MOVA," but "Rearden has refused to amend its allegation to the contrary . . . ." Mot. at 14 n.1. The contracts are not attached to or incorporated in the 5AC, and as such, the court may not consider them. However, the parties should ensure their representations to the Court are accurate.

11

legal rights to supervise and control DD3's use of MOVA" and "the contractual rights to require DD3 to turn over all work product upon request and the right to terminate the contract for copyright infringement").

### b.     Direct Financial Interest

Disney argues that Rearden has once again failed to "plausibly ple[a]d a direct financial benefit," because "Rearden has only managed to plead that four individual Maya files may have been infringed." Mot. at 15. The Court disagrees. The 5AC alleges that "Disney had an obvious and direct financial interest in exploitation of Rearden's copyright in the Contour program to use the Contour output works to animate CG characters in *Avengers: Infinity War* and *Avengers: Endgame*, including at least the Thanos, Ebony Maw, and Smart Hulk characters." 5AC ¶ 126. The 5AC further alleges that "Disney believed that Contour facial performance motion capture would make the Thanos, Ebony Maw, Hulk, and Smart Hulk CG characters more believable and compelling, which would in turn draw a wider audience to the films." *Id.* The Court finds these allegations are sufficient to plausibly plead Disney had a "direct financial interest in the infringing activity." *VHT*, 918 F.3d at 746. Accordingly, the Court denies Disney's motion to dismiss Rearden's vicarious infringement claim.

### C.     Leave to Amend

The Court previously granted Rearden "one more opportunity to remedy th[e] deficiencies" with respect to its contributory and vicarious infringement claims. Order at 8. Despite having been granted four attempts to plead a contributory infringement claim, Rearden once again fails to do so. The Court therefore dismisses the contributory infringement claim without leave to amend.

## CONCLUSION

For the foregoing reasons, Disney's motion to dismiss is granted in part and denied in part. Rearden's contributory infringement claim is dismissed without leave to amend. In all other respects, the motion is denied.

/ / /

/ / /

1   The parties shall appear for a case management conference on December 9, 2025, at
2   2:00 p.m.  A joint case management statement is due by December 2, 2025.
3   **IT IS SO ORDERED.**
4   Dated:  October 22, 2025



JON S. TIGAR
United States District Judge