JOSHUA M. MASUR  (SBN 203510)
*joshua.masur@hglaw.com*
**HG LAW LLP**
111 North Market Street, Suite 900
San Jose, California 95113
Tel. +1 669.213.1056

BRIAN J. BECK (admitted *pro hac vice*)
*brian.beck@hglaw.com*
**HG LAW LLP**
75 Broad Street, Suite 510
New York, New York 10004
Tel. +1 669.213.1058

*Attorneys for Plaintiffs*

KELLY M. KLAUS (SBN 161091)
*kelly.klaus@mto.com*
BLANCA F. YOUNG (SBN 217533)
*blanca.young@mto.com*
JOHN L. SCHWAB (SBN 301386)
*john.schwab@mto.com*
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Tel. +1 415.512.4000

SONAL N. MEHTA (SBN 222086)
*Sonal.Mehta@wilmerhale.com*
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Tel. +1 650.858.6000

JOSEPH TAYLOR GOOCH (SBN 294282)
*Taylor.Gooch@wilmerhale.com*
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
50 California St., Suite 3600
San Francisco, California 94111
Tel. +1 628.235.1000

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| REARDEN LLC, a California limited liability company, and REARDEN MOVA LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>TWDC ENTERPRISES 18 CORP. f/k/a THE WALT DISNEY COMPANY, a Delaware corporation, et al.,<br><br>Defendants. | Case No. 4:22-cv-02464-JST<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:  March 3, 2026<br>Time:  2:00 p.m.<br>Crtrm.:  6 |

**JOINT CASE MANAGEMENT STATEMENT**

Pursuant to the Court's Order (ECF No. 121), Rule 26(f) of the Federal Rules of Civil Procedure, Civil Local Rule 16-9, and the Standing Order for All Judges in the Northern District of California, Plaintiffs Rearden LLC and Rearden Mova LLC (collectively "Plaintiffs") and Defendants TWDC Enterprises 18 Corp., Walt Disney Pictures Production, LLC, Walt Disney Pictures, Marvel Studios LLC, MVL Film Finance LLC, and Lucasfilm Ltd. LLC (collectively, "Defendants"), by and through their respective counsel of record, hereby jointly submit this Case Management Statement.

## I.   JURISDICTION AND SERVICE

This is an action for copyright and patent infringement arising under 17 U.S.C. § 101, *et seq.*, and 35 U.S.C. § 101, *et seq.*, respectively. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), and § 1338 (patent and copyright jurisdiction).

There are currently no known issues regarding personal jurisdiction, service, or venue, and all parties have been served.

## II.   FACTS

The parties identify the principal factual issues currently known to them, without prejudice to raising additional factual issues, including subsidiary issues and those that may arise through the course of this action.

### A.   Plaintiffs' Statement

This case centers on two facets of Disney's unlicensed and infringing use of Rearden's intellectual property to create the characters at the heart of, and distribute, many of Disney's most famous and most profitable movies and television programs from the last decade.

#### 1.   Patent Issues

Disney and/or its contractors infringed four patents covering a pioneering and essential part of modern high-resolution performance facial capture: the pixel-wise cross-correlation algorithm used to generate high-resolution 3D facial surface models without relying only upon tracking markers, which is necessary to create photorealistic computer-animated characters that accurately track a performer's face in order to avoid the "uncanny valley" effect. *See, e*.g., Dkt. 90 at ¶¶ 133-

143, 164-173, 187-196, 216-225. Three of these patents, U.S. Patents Nos. 10,825,226 ("the '226 patent"), 11,024,072 ("the '072 patent"), and 11,030,790 ("the '790 patent") claim the storage on a machine-readable medium, streaming, communicating, or displaying (and in the case of the '790 patent, specifically movies or videos) with animated faces created using Rearden's inventive facial capture and animation method. The fourth, U.S. Patent No. 11,004,248 ("the '248 patent") claims the system of cameras together with a computer processor that performs Rearden's inventive method for generating a high-resolution 3D facial mesh.

Disney has advertised extensively its use of a facial capture system that it calls "MEDUSA," in some cases along with another technology that it calls "Anyma," to create numerous characters from numerous movies, including but hardly limited to Thanos from *Avengers: Infinity War* and *Avengers: Endgame*, Smart Hulk from *Avengers: Endgame*, and Will Smith's Genie from *Aladdin* (2019). Disney has also used, through its vendor Digital Domain 3.0 ("DD3"), the MOVA software stolen from Rearden to generate facial animation in *Beauty and the Beast* (2017), as was extensively litigated in the previous case of *Rearden LLC et al v. The Walt Disney Company et al*, Case No. 4:17-cv-4006 (N.D. Cal.) ("*Rearden v. Disney I*"). Disney has also claimed that some characters, including Thanos and Ebony Maw from *Avengers: Infinity War*, were animated with another DD3 product, "Masquerade," about which the parties dispute whether it is derived from and/or contains copyrighted code from MOVA. Rearden has personal knowledge of the operation of MOVA and knows that it practices the patented methods for facial capture; publicly available information about MEDUSA, Anyma, and Masquerade suggests that these technologies also practice the patented methods. Rearden believes that other modern high-resolution performance facial capture technologies also practice these patented methods.

Accordingly, the storage on a machine-readable medium, streaming, communicating, or displaying of any movie or television program containing characters made with MOVA, MEDUSA, Anyma, Masquerade or other infringing performance facial capture technologies during the time period in which the '226, '072, and '790 patents were in effect is an act of infringement of the '226, '072, and '790 patents, including not only the communication of these media programs using Disney's own Disney+ streaming services (or other streaming services now

owned by Disney such as Hulu), but the communication of such digital media programs through cable and broadcast television on channels owned by Disney (such as ABC, Fox, and Freeform), the communication of such digital media programs to, and their display within, movie theaters, and the sale of such digital media programs on physical media such as Blu-ray and DVD discs. Similarly, each use of MOVA, MEDUSA, Anyma, Masquerade or other infringing performance facial capture technologies during the time period in which the '248 patent was in effect is an act of infringement of the '248 patent.

### 2. Copyright Issues

After obtaining files from DD3 that were returned as a result of the judgment in *Shenzhenshi Haitiecheng Science and Technology Co., Ltd. v. Rearden LLC et al*, Case No. 4:15-cv-797 (N.D. Cal.) (the "Ownership Litigation"), Rearden discovered evidence that a number of files that corresponded to the creation of *Avengers: Infinity War* and *Avengers: Endgame* were created using Rearden's copyrighted MOVA technology, and not an independently created technology such as Masquerade or MEDUSA as Disney claimed. In some cases, Rearden only obtained spreadsheets listing file names that used the same naming conventions as known MOVA captures from *Beauty and the Beast*, but using the codeword for *Infinity War* ("MARY"), referring to the character "Thanos," and last modified in 2017, during the time period corresponding to work for *Infinity War*. Dkt. 90 at ¶¶ 64-71. However, the underlying files were not returned to Rearden and have not yet been produced in discovery. *Id.* at ¶ 72. Some Maya files for *Infinity War* did get returned, however, showing facial models of captures of Mark Ruffalo's face (the actor who played The Hulk in *Infinity War*) taken in August 2016, and of the character Ebony Maw from *Infinity War* created in September 2017, both corresponding to the timeline for the production of *Infinity War*. *Id.* at ¶¶ 73-85. These files do not merely mention MOVA in a filename, but contain numerous references to MOVA in identical form to the files undisputably created with MOVA for *Beauty and the Beast*, including MOVA source code in some files. The

Court found that these allegations were sufficient to plead direct infringement at least as to the Ruffalo and Ebony Maw Maya files.[1] Dkt. 87 at 9.

Following the Ninth Circuit's decision in *Rearden v. Disney I*, the Court held that Rearden's Fifth Amended Complaint sufficiently alleged vicarious infringement. Dkt. 109. Disney filed a motion for reconsideration of that decision which is currently pending, but as to which Rearden believes Disney has failed to show any material error by the Court that would support reconsideration. Dkt. 115. If the Court denies Disney's motion for reconsideration, Rearden intends to obtain discovery into how exactly the Ruffalo and Ebony Maw files were created—and expects that this discovery will show that Disney's use of MOVA for *Infinity War* was far more extensive than the creation of a few files, because—among other reasons—there would be no reason for Disney and DD3 to use MOVA during the creation of *Infinity War* in violation of this Court's injunction to create files, while DD3 abruptly and completely ceased use of MOVA post-injunction for all other studios other than Disney, if they had no highly motivated intent to use them to make *Infinity War*.

## B. Defendants' Statement

### 1. Patent Issues

Defendants TWDC Enterprises 18 Corp f/k/a The Walt Disney Company and Lucasfilm Ltd. LLC (together, the "MoCap Defendants") independently develop their own innovative technologies, including the accused Medusa and Anyma systems. The Academy Award®-winning MEDUSA system and ANYMA were developed from years' worth of the MoCap Defendants' research and scientific advances in capturing and modeling of human faces. MEDUSA identifies facial features in a plurality of different facial expressions and then produces life-like digital doubles for visual effects and computer games. ANYMA delivers high quality per-frame facial geometry that accurately recreates a multitude of facial expressions. These

---

[1] Rearden disagrees with the Court's conclusion that the allegations of, *inter alia*, the Fourth and Fifth Amended Complaints were insufficient to plausibly allege direct infringement beyond the specific Ruffalo and Ebony Maw files, or to plausibly allege contributory infringement, and intends to preserve for appeal its position that the Court applied an incorrect standard for plausibility.

products are high-fidelity, performance-based capture systems that perform without the need for any artificial aids such as applied random patterns or projected illumination patterns. Defendants had developed the technology behind MEDUSA and ANYMA years before Plaintiffs ever filed their first patent infringement claims against Disney in *Rearden v. Disney I* and years before the Asserted Patents issued.

In contrast, the Asserted Patents, each of which expired on October 20, 2025, claim priority to, and share the same specification as, U.S. Patent No. 8,659,668 (the '668 Patent), which was previously asserted in *Rearden v. Disney* 1. The '668 Patent is directed to a fundamentally different technology: a motion capture using the application of applied random patterns or projected illumination patterns.

The Asserted Patents also discuss the fundamentally different techniques of using phosphorescent paint, strobing light rigs, and a strobing camera rig to aid in the detection of facial shapes, but the claims are limited to a specific imaging process technique. Moreover, to overcome unpatentability challenges, Rearden argued that its claims are limited to a particular pixel-wise cross-correlation algorithm described in the specification. The Court adopted this limitation at least for purposes of resolving the Motion to Dismiss. Dkt. 76 at 10-15. This pixel-wise cross-correlation algorithm converts points across multiple 2D frames to 3D locations by repeatedly evaluating pixels at successive depths to identify the depth most correct for a given pixel. All fundamentally different from what Medusa and Anyma do. For this, and other reasons, the MoCap Defendants do not practice the asserted claims of the Asserted Patents.

In addition, and at a minimum, to the extent Plaintiffs have sought to extend the scope of the Asserted Patents on the MoCap Defendants' technology, the patents are invalid.

### 2. Copyright Issues

This case presents a narrow vicarious liability copyright infringement dispute. This is despite Rearden's repeated efforts over nearly three years—and five amended complaints—to transform it into a sweeping claim of alleged widespread infringement of the MOVA Contour software program.

In its ruling on the most recent motion to dismiss, the Court held that Rearden plausibly alleged infringement with respect to four individual Maya files—three associated with the actor Mark Ruffalo and one associated with the character Ebony Maw. As the Court has already recognized, those four files are the only instances of direct infringement that Rearden has managed to identify "among the thousands of files it has received and millions that DisputeSoft has reviewed." Dkt. 87 at 9. The Court has expressly rejected Rearden's broader theory that MOVA was used "extensively" in connection with *Avengers: Infinity War* and *Avengers: Endgame*, or that DD3 copied substantial amounts of MOVA source code into its own Masquerade facial motion capture software. *Id.* at 8; Dkt. 109 at 5.

Rearden's inability to plead widespread infringement is not for lack of opportunity. The Court has dismissed Rearden's copyright claim multiple times, granting leave to amend after Rearden represented additional review of materials might yield further evidence. Despite years of litigation, multiple rounds of amendment, and access to voluminous production from related proceedings, the operative Fifth Amended Complaint still concedes that Rearden "cannot currently identify" any additional instances of supposed direct infringement. 5AC ¶ 88. In other words, after extensive proceedings, the case remains confined to four discrete files created during the production of two films.

The remaining copyright claim may be resolved entirely on the pleadings. Defendants have moved for reconsideration of the Court's October 22, 2025 Order, on the ground that the Court failed to consider material facts presented before the Order. In that Order, the Court concluded that Plaintiffs plausibly alleged Defendants had the right and ability to prevent the alleged infringement based on the allegation that Defendants "contracted with DD3 for facial performance capture services and output works using the Contour program for . . . *Avengers: Infinity War* and *Avengers: Endgame*. Dkt. 109 at 11 (quoting 5AC ¶ 120). But, as Defendants have argued, the governing contracts with DD3—which are referenced throughout the pleadings and incorporated by reference—did *not* engage DD3 to use the MOVA Contour program. *See* Dkt. 114 at 2-3. To the contrary, the contracts *expressly barred* DD3 from using MOVA Contour

software in performing its services on both films. *Id.* at 3. If the Court grants the motion for reconsideration, the copyright claim may be dismissed in its entirety.

If the Court denies the motion for reconsideration, discovery and litigation of the copyright claim will be targeted to these issues.

### III.  LEGAL ISSUES

#### 1.  Patent Issues

1. The proper construction of disputed claim terms in the Asserted Patents under *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) and its progeny.

2. Whether Defendants are liable to Rearden for direct infringement of one or more claims of the Asserted Patents under 35 U.S.C. § 271(a).

3. Whether Defendants are liable to Rearden for indirect infringement of one or more claims of the Asserted Patents under 35 U.S.C. §§ 271(b) or (c).

4. Whether the asserted claims of the Asserted Patents are invalid, *e.g.*, under 35 U.S.C. § 101 et seq. (including but not limited to §§ 102, 103, and 112).

5. If infringement is found, whether Defendants owe any damages under 35 U.S.C. § 284 and 35 U.S.C. § 287.

6. Whether this case is exceptional under 35 U.S.C. § 285, entitling the prevailing party to attorneys' fees.

7. Whether the infringement was willful.

#### 2.  Copyright Issues

1. Whether DD3[2] directly infringed Rearden's copyright in the MOVA Contour software program in connection with the production of *Avengers: Infinity War* and *Avengers: Endgame*.

2. Whether one or more Defendants are vicariously liable for such direct infringement, including (1) whether such Defendants had the legal right and practical ability to

---

[2] Defendants' position is that this issue is limited to direct infringement by DD3; Plaintiffs' position is that this issue includes at least direct infringement by DD3, and may include direct infringement by other persons or entities whose identity is not yet known to Plaintiffs.

control the alleged infringement; and (2) whether such Defendants directly benefitted financially from the alleged infringement.

      3.     If Defendants are liable for copyright infringement:

          a.     The amount that Rearden should recover as "actual damages suffered … as a result of the infringement" under 17 U.S.C. § 504(b), or as statutory damages under 17 U.S.C. § 504(c); and

          b.     Whether Rearden is entitled to recover, and if so the amount of, Defendants' profits [from *Avengers: Infinity War* and *Avengers: Endgame*] that are attributable to the infringement and are not taken into account in computing the actual damages under 17 U.S.C. § 504(b).

* * *

The Parties reserve the right to raise additional legal issues that may arise through the course of this action.

## IV. MOTIONS

### A. Pending Motions

Defendants' motion pursuant to Civil L.R. 7-9 for reconsideration of the Court's October 22, 2025 Order, ECF No. 109, insofar as the Order denied Defendants' Motion to Dismiss the claim for vicarious copyright infringement claim in Plaintiffs' Fifth Amended Complaint (ECF No. 114), was fully briefed as of December 15, 2025.

### B. Anticipated Motions

The Parties anticipate moving for summary judgment and may file dispositive and non-dispositive motions as the case progresses, including motions related to claim construction.

## V. AMENDMENT OF PLEADINGS

The parties do not currently anticipate further amendments of pleadings, but reserve the right to seek leave to amend, including pursuant to Fed. R. Civ. P. 15(a)(2), as the case develops.

## VI. EVIDENCE PRESERVATION

The parties have reviewed the Northern District of California's Guidelines for the Discovery of Electronically Stored Information ("ESI Guidelines") and Checklist for Rule 26(f)

Meet and Confer Regarding ESI, including those portions related to evidence preservation. Additionally, the parties have met and conferred about reasonable and proportionate steps to take regarding evidence preservation and have taken appropriate and reasonable measures to preserve relevant evidence based on their current understanding of the scope of the issues.

## VII.  DISCLOSURES

Pursuant to Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure, the parties will exchange their initial disclosures on March 24, 2026.

## VIII.  DISCOVERY

### A.  Discovery Taken to Date

No discovery has yet been taken specific to this case.

The parties have agreed to electronic service by email.

Rearden contends that certain discovery in *Rearden v. Disney I* and/or *Shenzhenshi Haitiecheng Science and Technology Co., Ltd. v. Rearden LLC*, No. 4:15-cv-00797-JST (the "*Ownership Litigation*") will be relevant in this case.  Defendants believe the discovery from *Rearden v. Disney I* has minimal relevance to this case, including because the case involved different parties and concerned different factual and legal issues.

The parties are meeting and conferring regarding an appropriate protective order.

Rearden submits that the protective order entered in *Rearden v. Disney I* (ECF No. 114, Aug. 30, 2018) should be adopted in and extend to discovery in this case.

Defendants believe that the parties should submit a protective order appropriate for the claims at issue in this Action that is substantively similar to the protective order entered in *Rearden v. Disney I* but disagree that the prior protective order should be adopted in full in this case.  Defendants note that *Rearden v. Disney I* involved numerous third parties, including different defendants, that are not parties to or otherwise involved in the underlying facts of this case, as well as different counsel.  Defendants, however, will not oppose a motion by Plaintiffs to modify the protective order entered in *Rearden v. Disney I* (ECF No. 114, Aug. 30, 2018) to extend the duration of that order to 60 days after the final disposition of this Action.

Subject to the Court granting a motion by Plaintiffs to modify the protective order entered in *Rearden v. Disney I* (ECF No. 114, Aug. 30, 2018) to extend the duration of that order to 60 days after the final disposition of this Action, the parties agree that counsel of record from *Rearden v. Disney II*, shall have access to discovery in *Rearden v. Disney I*, consistent with the amended Protective Order. The parties further agree that discovery in *Rearden v. Disney I* is not deemed produced in this case, but that parties may request (and object to) production of documents previously produced in *Rearden v. Disney I* in the ordinary course of discovery in this case.

### B. Scope of Anticipated Discovery

#### 1. Copyright Issues

As noted above, Defendants believe that if the copyright claims proceed, discovery should be limited and targeted to the issues surrounding the four Maya files.

Plaintiffs disagree that the scope of discovery should be limited by the four Maya files identified in the Complaint. As an initial matter, Plaintiffs' infringement claims are not limited to those files, which are merely those of which Plaintiffs are aware before obtaining discovery.[3] Moreover, even as to those four files, Plaintiffs are entitled to discovery relevant to Plaintiffs' copyright claims, which would necessarily include but is not limited to information related to the creation of those files, the software used to create them, the use of the files in the workflow for *Infinity War* and *Endgame*, and the existence of and same issues regarding any other files created at least for *Infinity War* that share the characteristics of the four Maya files that the Court found to plausibly raise an inference of direct infringement.

#### 2. Patent Issues

The parties currently anticipate discovery on issues typically raised in patent litigation, including liability and damages.

---

[3] The Special Master in the Ownership Litigation found these files, applying search criteria consistent with his charge (to identify Rearden MOVA property) that are much narrower than would be appropriate to identify allegedly copyright infringement of the type at issue here. *See Ownership Litigation*, Dkt. 521. The fact that he identified *any* files related to *Infinity War* was accidental and incidental, and suggests that they are not alone.

**C.     Proposed Limitations or Modifications of the Discovery Rules**

   **1.     Fact Discovery**

The Parties agree to the following limits on discovery:

- The parties shall be limited to 75 requests for admission per side (excluding any requests for admission to authenticate documents, which shall be unlimited).
- Each side may take up to 50 hours of testimony for depositions of the parties, with a limit of 10 hours of 30(b)(6) testimony for depositions per side.
- Each side may take up to 35 hours of nonparty depositions per side.
- The above cumulative limits on deposition time do not constitute any agreements by the parties that an opposing Party is entitled to take its maximum hours of testimony from them; nor does this cumulative limit alter the limitation on each deposition's duration specified under the Federal Rules, except that an inventor of an asserted patent may be deposed for 14 hours. Such a deposition shall not last more than 7 hours per day as set forth in Rule 30(d)(1) unless otherwise agreed to by the parties. Regardless of the actual length of record time, for any witness a party chooses to depose, each deposition shall count for a minimum of 3.5 hours of record time.

   **2.     Expert Depositions**

The parties agree that each expert can be deposed for up to 7 hours for each opening or rebuttal (not reply) report or declaration submitted by the expert in this case. For example, an expert providing reports regarding infringement and validity may be deposed for 14 hours. Experts, however, shall not be deposed for more than 7 hours in one day as set forth in Rule 30(d)(1) unless otherwise agreed to by the parties

Any party may later move to modify these limitations for good cause.

**D.     Stipulated E-Discovery Order**

The parties have reviewed the Court's Model Stipulated Orders Regarding Discovery of Electronically Stored Information in Standard and Patent cases. The parties are mindful of this Court's June 2, 2025, Standing Order for All Civil Cases Before District Judge Jon S. Tigar,

including as it relates to ESI.  The parties have exchanged drafts of an ESI order and will continue to work together to agree on a mutually acceptable proposed order.

### E. Proposed Discovery Plan Pursuant to Fed. R. Civ. P. 26(f)

#### 1. Disclosures Under Rule 26(a)

The parties do not currently contemplate any changes to the form or requirement for disclosures under Rule 26(a), but will exchange their initial disclosures on March 24, 2026.

#### 2. Subjects for and Timing and Phasing of Discovery

The parties currently anticipate discovery on the issues typically raised in copyright and patent litigation, including liability and damages.  Other than the phasing requirements imposed by the Patent Local Rules, the parties do not currently request any phasing or focusing of discovery.  In light of the Court's practice in patent cases, the parties agree that the deadline for completion of fact discovery should be set after the Claim Construction Ruling.

#### 3. Electronically Stored Information

The parties are not currently aware of any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced.  The parties are mindful of this Court's June 2, 2025, Standing Order for All Civil Cases Before District Judge Jon S. Tigar, including as it relates to ESI.  The parties have exchanged drafts of an ESI order and will continue to work together to agree on a mutually acceptable proposed order.

#### 4. Privilege, Work Product, and Trial-Preparation Protection

The parties agree that, absent agreement or filing of a motion to change the deadline, the deadline for compliance with Fed. R. Civ. P. 26(b)(5)(A) by serving logs of documents that are subject to claims of privilege, work product, or trial-preparation protection shall ordinarily be ninety days after a timely response to discovery to which such documents would otherwise be responsive.  Notwithstanding the previous sentence, no later than 14 days before a scheduled deposition of a witness currently or formerly affiliated with a party and/or designated by a party to testify pursuant to Fed. R. Civ. P. 30(b)(6), such affiliated and/or designating party shall certify that its privilege logs reflect all responsive communications involving or documents authored by

such witness, and/or related to any matters on which such witness has been designated, that are required to be logged.

The parties agree that privileged communications between a party and its outside counsel of record (including lawyers or employees of law firms) in this case or in the related cases identified in Section X, below, dated on or after July 17, 2017 (the date of filing of the Complaint in *Rearden v. Disney I*), are not required to be logged.

An inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon discovery of an inadvertent failure to designate, a Producing Party may notify the Receiving Party in writing that the material is to be designated. Upon receipt of such notice, the Receiving Party must make reasonable efforts to assure that the material is thereafter treated in accordance with the provisions of this Order. The Designating Party shall provide substitute copies of documents bearing the confidentiality designation. Upon receiving substitute copies, the Receiving Parties shall return or securely destroy, at the Designating Party's option, all material that was not designated properly.

### 5. Changes to Discovery Limitations

The parties have proposed limitations in section VIII.C, above. The parties further agree that service of a complete copy of documents via email on or before midnight Pacific Time shall count as same-day service.

### 6. Other Orders

The parties are not currently aware of any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).

### F. Identified Discovery Disputes

The parties have not currently identified any discovery disputes.

## IX. CLASS ACTIONS

This is not a class action.

## X. RELATED CASES

This case is related to the *Ownership Litigation*; *Rearden v. Disney I*; *Rearden LLC v. Twentieth Century Fox Film Corporation*, No. 4:17-cv-04191; *Rearden LLC v. Paramount Pictures Corporation*, No. 4:17-cv-04192; and *Rearden LLC v Crystal Dynamics, Inc.*, No. 4:17-cv-04187-JST.

## XI. RELIEF

### A. Plaintiffs' Statement

Rearden will disclose its damages contentions for direct and indirect patent infringement as contemplated by the Patent Local Rules, including Pat. L.R. 3-8. As a general matter, however, Rearden seeks damages in the form of a reasonable royalty under 35 U.S.C. § 284, calculated as a percentage of the revenue obtained by Defendants for the infringing acts of creating, streaming, broadcasting, or otherwise communicating movies, television programs, or other video media created using the infringing facial capture and animation technology, or theatrical display of movies, and sales of physical media such as Blu-ray or DVD discs. Rearden estimates an appropriate royalty to be substantially in excess of $100 million, but cannot provide a more detailed estimate of patent damages at this time, as the revenue earned by Defendants from the use of the infringing technology is non-public information uniquely in Defendants' possession. Rearden also seeks a finding that this case is exceptional, along with its reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285.

Rearden seeks damages for vicarious copyright infringement in the form of the actual damages suffered by Rearden and all profits attributable to the infringement and not taken into account in computing the actual damages under 17 U.S.C. § 504(b). In seeking this remedy, Rearden notes that it is only required to present proof of the infringer's gross revenue, which for *Avengers: Infinity War* and *Avengers: Endgame* begins with about $2.05 billion in worldwide box office revenue for *Infinity War* and about $2.8 billion in worldwide box office revenue for *Endgame* based on public reporting, not including other sources of revenue from television and streaming distribution or physical media sales. Under 17 U.S.C. § 504(b), the burden is on Defendants to prove their deductible expenses and the elements of profit attributable to factors

other than the copyrighted work.  Rearden also seeks its costs of suit, including reasonable attorneys' fees.

### B. <u>Defendants' Statement</u>

Defendants deny that Rearden is entitled to any relief described above or otherwise and disagrees it has any liability to Rearden or that Rearden is entitled to any damages.  Defendants request (1) a dismissal of Plaintiffs' Fifth Amended Complaint with prejudice and a denial of the relief requested; (2) to be awarded costs and expenses of suit, including reasonable attorneys' fees, on Plaintiffs' copyright claim; (3) a declaratory judgment that Defendants do not infringe any asserted claim of the Asserted Patents directly or indirectly, literally or under the doctrine of equivalents; (4) a declaratory judgment that each and every asserted claim of each and every Asserted Patent is invalid as claiming ineligible subject matter, are anticipated and/or rendered obvious over the prior art, lack adequate written description, are not enables, and/or are indefinite; (5) a finding that this case is exceptional and an award of Defendants' reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285; and (6) an award for any such other and further relief as the Court may deem just and appropriate.

## XII. <u>SETTLEMENT AND ADR</u>

Plaintiffs request that the Court refer this case to mediation pursuant to ADR L.R. 6-3(a).

## XIII. <u>OTHER REFERENCES</u>

The parties have not consented to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

## XIV. <u>NARROWING OF ISSUES</u>

The parties will meet and confer regarding the effect, if any, of prior factual determinations by this Court and by the Ninth Circuit in *Rearden v. Disney I*.  The parties will raise with the Court relevant issues, if any, that remain after the meet-and-confer process.

## XV. <u>SCHEDULING</u>

The parties currently propose the following modified schedule below that departs slightly from the local patent rules of this Court.

| Event | Parties Proposal |
|---|---|
| Joint Case Management Statement | Tuesday, February 24, 2026 |
| Case Management Conference | Tuesday, March 3, 2026 at 2:00 PM |
| Rule 26 Initial Disclosures | Tuesday, March 24, 2026 |
| Rearden's Disclosure of Asserted Claims and Infringement Contentions and Accompanying Document Production (Pat. L.R. 3-1, 3-2) | Tuesday, May 5, 2026 |
| Disney's Invalidity Contentions and Accompanying Document Production (Pat. L.R. 3-3, 3-4) | Friday, June 19, 2026 |
| Deadline for the parties to amend their pleadings without leave | Friday, June 26, 2026 |
| Exchange of List of Proposed Terms for Construction (Pat. L.R. 4-1) | Friday, July 3, 2026 |
| Exchange of Preliminary Claim Constructions & Extrinsic Evidence (Pat. L.R. 4-2) | Friday, July 24, 2026 |
| Joint Claim Construction & Prehearing Statement & Expert Reports (Pat. L.R. 4-3) | Tuesday, August 18, 2026 |
| Damages Contentions (Pat. L.R. 3-8) | Monday, August 10, 2026 |
| Responsive Damages Contentions (Pat. L.R. 9) | Wednesday, September 9, 2026 |
| Close of Claim Construction Discovery (Pat. L.R. 4-4) | Thursday, September 17, 2026 |
| Rearden's Opening Claim Construction Brief (Pat. L.R. 4-5(a)) | Friday, October 2, 2026 |

| Event | Parties Proposal |
|---|---|
| Disney's Responsive Claim Construction Brief (Pat. L.R. 4-5(b)) | Friday, October 16, 2026 |
| Rearden's Reply Claim Construction Brief (Pat. L.R. 4-5(c)) | Friday, October 23, 2026 |
| Damages Contentions Meeting & Certification (Pat. L.R. 3-10) | By Monday, November 9, 2026 |
| Claim Construction Tutorial | Monday, November 2, 2026 |
| Claim Construction Hearing (Pat. L.R. 4-6) | On or after Monday, November 16, 2026, as convenient for the Court |
| Advice of Counsel Disclosure (Pat. L.R. 3-7) | 21 days after Court issues Claim Construction Ruling |

The Parties understand that this Court's typical practice is to schedule a Further Case Management Conference after issuing its Claim Construction Ruling, at which time the Court sets the schedule for the remainder of the case, including trial. In the event that the Court elects at this time to set dates through trial, however, the Parties propose the following deadlines:

| Event | Parties' Proposal (Absent Post-Ruling Further Case Management Conference) |
|---|---|
| Close of Fact Discovery | 90 days after Court issues Claim Construction Ruling |
| Service of Opening Expert Reports (on issues for which a party bears the burden of proof) | 30 days after fact discovery deadline |
| Service of Expert Rebuttal Reports | 30 days after opening reports |
| Service of Expert Reply Reports | 30 days after rebuttal reports |
| Close of Expert Discovery | 30 days after reply reports |

| Event | Parties' Proposal (Absent Post-Ruling Further Case Management Conference) |
|---|---|
| Filing of Daubert Motions<br><br>Last Day to File Dispositive Motions | 30 days after close of expert discovery |
| Daubert and Dispositive Opposition Briefs | 30 days after opening briefs |
| Daubert and Dispositive Reply Briefs | 30 days after opposition briefs |
| Hearing on Daubert and dispositive motions | At the availability and scheduling of the Court |
| Final Pretrial Conference | At the availability and scheduling of the Court |
| Trial Ready Month | At the availability and scheduling of the Court |

## XVI. TRIAL

All parties have demanded a jury trial to the extent provided by law.

The parties estimate that presentation of evidence at trial will require up to approximately 80 hours.

## XVII. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15.

## XVIII. PROFESSIONAL CONDUCT

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

XIX. **OTHER**

The parties are not currently aware of any other matters that require the Court's involvement.

Dated: February 24, 2026

HG LAW LLP
JOSHUA M. MASUR
BRIAN J. BECK

By: */s/ Joshua M. Masur*

Attorneys for Plaintiffs

Dated: February 24, 2026

MUNGER, TOLLES & OLSON LLP
KELLY M. KLAUS
BLANCA F. YOUNG
JOHN L. SCHWAB

WILMER CUTLER PICKERING HALE AND DORR LLP
SONAL N. MEHTA
JOSEPH TAYLOR GOOCH

By: */s/ Taylor Gooch*

Attorneys for Defendants

**CIVIL LOCAL RULE 5-1 ATTESTATION**

I, Joshua M. Masur, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with Civil Local Rule 5-1(i)(3), I hereby attest that Taylor Gooch concurred in the filing of this document.

*/s/ Joshua M. Masur*