UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REARDEN LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TWDC ENTERPRISES 18 CORP., et al.,<br><br>Defendants. | Case No. 22-cv-02464-JST<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION**<br><br>Re: ECF No. 114 |

Now before the Court is Defendants TWDC Enterprises 18 Corp. f/k/a The Walt Disney Company, Disney Content Services Co., Inc. d/b/a Disney Pictures Productions, LLC; Walt Disney Pictures; Marvel Studios, LLC; MVL Film Finance LLC; Lucasfilm Ltd. LLC; and Disney Studio Production Services Co., LLC's (collectively, "Disney") motion for reconsideration. ECF No. 114. Disney asks the Court to reconsider its October 22, 2025 order granting in part and denying in part Disney's motion to dismiss Plaintiffs Rearden LLC and Rearden MOVA LLC's (collectively, "Rearden") fifth amended complaint ("FAC"). ECF No. 109. Rearden opposes the motion, ECF No. 115, and Disney has filed a reply. ECF No. 118. The Court will deny the motion.

**I.       BACKGROUND**

The factual and procedural history of this case is summarized in greater detail in this Court's prior orders. *See* ECF Nos. 54, 76, 87, 109. This is the third case involving the ownership and use of the MOVA Contour Reality Capture program. The MOVA program is used to capture high-resolution 3D models of a performer's face and facial movements to create facial animations for movies. ECF No. 90 ¶ 28. In the first litigation, this Court decided that the Plaintiff here, Rearden, owned MOVA and a Chinese entity, Shenzhenshi Haitiecheng Science and Technology

("SHST"), did not.  *Shenzhenshi Haitiecheng Science & Tech. Co., Ltd. v. Rearden LLC* ("*Rearden I*"), No. 15-cv-0797-JST, 2017 WL 3446585, at *9 (N.D. Cal. Aug. 11, 2017).  SHST had supposedly acquired MOVA when a now-former Rearden employee, Greg LaSalle, sold MOVA to it.  SHST then licensed the use of MOVA to Digital Domain 3.0, Inc. ("DD3"), who is LaSalle's current employer.  *Rearden I*, 2017 WL 3446585, *7–8 (N.D. Cal. Aug. 11, 2017); ECF No. 90 ¶ 63.  After finding that LaSalle lacked the authority to sell MOVA to SHST, *id.*, the Court ordered the return of assets to Rearden including MOVA software, source code, and output files.  *Rearden I*, No. 15-cv-00797-JST (N.D. Cal. Oct. 2, 2017), ECF No. 449.  Among those files were the "Ruffalo Maya Files" and "Ebony Maw Maya File" at issue in this case.

Before the *Rearden I* litigation, Disney contracted with DD3 to use MOVA in the creation of the live-action remake of the 1991 animated film, *Beauty and the Beast*.  *Rearden v. Walt Disney Pictures* ("*Rearden II*"), 152 F.4th 1058, 1063–64 (9th Cir. 2025).  *Beauty and the Beast* was released in March 2017, five months before the resolution of the ownership dispute.  *Id.* Rearden sued Walt Disney Pictures for vicarious copyright liability, among other counts, and received a favorable jury trial ruling.  *Id.* at 1066.

This case arises under similar circumstances.  Beginning in October 2016, before the Court's order in *Rearden I*, Disney contracted with DD3 for work on the *Avengers: Infinity War* and *Avengers: Endgame* movies.  ECF No. 90 ¶ 36.  One of the contracts, titled the "Mary Lou Agreement," governs DD3's work.  *Id.* ¶ 76; ECF No. 42 at 12.  Rearden alleges that the development schedule under the Mary Lou Agreement suggests that DD3 worked on facial capture for the *Avengers* movies around the same time as the Ruffalo Maya Files were created.  ECF No. 90 ¶ 76–77.  Rearden further alleges that DD3 used the Ebony Maw Maya File in the *Avengers* movies.  Ebony Maw is a character who appeared in both *Avengers: Infinity War* and *Endgame*, and no other *Avengers* movie.  *Id.* ¶ 79.  The files allegedly contain metadata similar to the MOVA files used in the *Beauty and the Beast* remake, despite DD3's insistence that it was not created with MOVA but with "Masquerade" software.  *Id.* ¶¶ 80–85.  Rearden also alleges that DD3 returned files that include MOVA captures of Josh Brolin, who played Thanos in *Avengers: Infinity War* and *Endgame,* and test face captures by Greg LaSalle, which it believes were created

United States District Court
Northern District of California

2

in connection with *Avengers: Infinity War/Endgame.  Id.* ¶¶ 62–63.

Disney moved to dismiss Rearden's FAC, and the Court granted the motion except as to the vicarious liability claim.  ECF No. 109.  In partially ruling for Rearden, the Court found that Rearden plausibly alleged that Disney had "a legal right to stop DD3's alleged infringement or a practical ability to prevent that infringement."  ECF No. 109 at 11.  The Court credited Rearden's allegation that Disney "contracted with DD3 for facial performance capture services and output works using the [MOVA] program" and did not consider Disney's contentions regarding the contract because it was "not attached to or incorporated in the 5AC."  *Id.* at 11 & n.2.

Disney moved for, and was granted, leave to file a motion for reconsideration.  The gravamen of Disney's motion is that the Court erred by not considering the two contracts that had already been placed on the court's docket and were cited to in Disney's motion to dismiss.  ECF No. 114 at 3–4; ECF No. 118 at 4.  Those two contracts—the Mary Lou Agreement and the Untitled Agreement—are substantially similar.  They include prohibitions on the use of MOVA or the involvement of MOVA employees in DD3's work subject to the contract; clauses allowing Disney to cancel the contract for violation of those warranties; and indemnification clauses concerning costs incurred for any violations by DD3 of its warranties and representations.  *See, e.g.,* ECF No. 41-3 ¶¶ 16(f)–(g), 17(a) (sealed).

## II.   JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

## III.   LEGAL STANDARD

A district court has discretion to revise any interlocutory order that is entered before the entry of judgment adjudicating all claims in the action.  Fed. R. Civ. P. 54(b).  In this District, motions for reconsideration are governed by Civil Local Rule 7-9, which requires a party to make a motion for leave to file a motion for reconsideration.  *See* Civil L.R. 7-9(a).  The party moving for leave to file a motion for reconsideration must show reasonable diligence in bringing the motion and one of the following grounds: (1) a "material difference in fact or law from that which was presented to the Court before" entry of the interlocutory order, which, in the exercise of reasonable diligence, the party applying for reconsideration did not know at the time of the order;

United States District Court
Northern District of California

(2) the "emergence of new material facts or a change in law occurring after the time of such order"; or (3) a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before" the entry of the interlocutory order. *See* Civil L.R. 7-9(b)(1)–(b)(3).

The determination whether to grant a motion for reconsideration is within the district court's discretion. *See In re Agric. Rsch. & Tech. Grp., Inc*., 916 F.2d 528, 533 (9th Cir. 1990). "[M]ere disagreement with a court's order does not provide a basis for reconsideration." *Maynard v. United Servs. Auto. Ass'n Fed. Sav. Bank*, No. 21-CV-04519-JSW, 2022 WL 4126272, at \*4 (N.D. Cal. Sept. 9, 2022).

## IV.    DISCUSSION

Disney makes two arguments in support of its motion for reconsideration. "First, the Court's conclusion that Defendants' contracts with DD3 'are not attached to or incorporated in the 5AC' did not consider material facts and legal arguments that require a different conclusion." ECF No. 114 at 3 (emphasis omitted). "Second, the DD3 contracts are in the record, and they make it clear that Defendants did not contract with DD3 to use MOVA (Contour) software on *Infinity War* and *Endgame*." *Id.* (emphasis omitted). Thus, "Rearden has not pled the 'requisite control' [for a vicarious infringement claim] because it has not plausibly alleged that Disney had both 'a legal right to stop or limit the directly infringing conduct' and 'the practical ability to do so.'" ECF No. 118 at 7 (citing *Williams v. Gaye*, 885 F.3d 1150, 1177 (9th Cir. 2018)).

As set forth below, the Court agrees with Disney's first argument, but not its second argument. The Mary Lou Agreement is incorporated into the complaint by reference and therefore the Court should have considered it. But including that contract in the Court's analysis does not change its conclusion that the complaint alleges sufficient control by Disney over DD3's activities to plead a claim for vicarious infringement.

### A.    Incorporation by Reference of Disney's Contracts with DD3

Disney did not attach the contracts to its motion to dismiss but provided the Court with citations to contracts that had already been placed on the docket. *See* ECF No. 94 at 14:16–17 (citing ECF No. 42-1 at Ex. 1, 2). The question is whether those contracts are incorporated into

United States District Court
Northern District of California

4

Rearden's complaint.

"[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Documents "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim," *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), and "the documents' authenticity . . . is not contested," *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (alteration in original) (quotation marks and citation omitted). "[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

Rearden's FAC refers to Disney's contracts with DD3, including their content, throughout its allegations, but specifically names only the Mary Lou Agreement. ECF No. 90 ¶¶ 76 (citing to the provisions of the Mary Lou Agreement), 98 (referring to "the contracts between DD3 and Defendants for work on *Avengers: Infinity War* and *Avengers: Endgame*"), 120 (noting Disney's contracts "with DD3 for facial performance capture services and output works using the Contour program for Disney's films *Avengers: Infinity War* and *Avengers: Endgame*"), 125 (referring to "the contract between DD3 and Disney"). Rearden alleges that Disney contracted with DD3 for work on *Avengers: Infinity War* and *Avengers: Endgame* using MOVA and that Disney routinely reviewed the files to inspect the work process. *Id.* ¶ 98. Rearden claims that Disney's contract was for "facial performance capture and output works using the [MOVA] program." *Id.* ¶ 120. Rearden's allegations include details about Disney's right to cancel the contract, requirements that DD3 "design all '[s]hots and composited elements' 'pursuant to Producer's requirements,' and requires that DD3 submit elements and work in progress to the Producer on at least a weekly basis . . . ." *Id.* ¶ 125.

Rearden's allegations regarding Disney's contracts with DD3 extend beyond "the mere mention of the existence" of the contracts, *see Khoja*, 899 F.3d at 1002, but instead provide the connective tissue for its vicarious infringement claim. The specific allegations and quotes from the contracts support Disney's "authority and practical ability" to supervise DD3. *Id.* ¶¶ 120–28.

5

The complaint connects those agreements with the Ruffalo Maya Files and the *Avengers* movies at issue in this case. ECF No. 90 ¶¶ 76, 98–100, 110–11, 118; ECF No. 99 at 9.

Because the complaint specifically names the Mary Lou Agreement, the Court should have incorporated that agreement by reference and considered its contents.[1] *Khoja*, 899 F.3d at 1002. While "a court may assume an incorporated document's contents are true for purposes of a motion to dismiss under Rule 12(b)(6)… it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003. But when the incorporated document presents a contradiction, the Court need not accept the allegation as true. *See, e.g., Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Mullis v. United States Bankr. Ct.*, 828 F.2s 1385, 1388 (9th Cir. 1987). The Court, therefore, incorporates the contracts but continues to draw all reasonable inferences, considering those documents, in favor of Rearden. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.　　Motion to Dismiss

The Court now reconsiders its denial of Disney's motion to dismiss Rearden's vicarious infringement claim given the incorporation of the Mary Lou Agreement. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations need not be detailed, but the facts must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

[1] The Court does not consider the Untitled Agreement because Rearden's Fifth Amended Complaint does not mention it. The fact that agreement had been placed on the docket says nothing about its relationship to the allegations of the complaint.

United States District Court
Northern District of California

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). In so doing, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis omitted). However, the Court "may ... consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). Finally, a plaintiff may "plead[ ] facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 603 F.3d 110, 120 (2d Cir. 2010)).

To plead a vicarious liability claim, a plaintiff must allege that the defendant had "(1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019) (citation omitted). The first element requires 'both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.'" *Id.* (citation omitted). Disney only contends that the contracts address its right and ability to supervise DD3's allegedly infringing conduct.

Disney argues that the contents of the Mary Lou Agreement contract make "implausible Plaintiffs' allegation that Defendants contracted with DD3 to provide facial performance capture

7

United States District Court
Northern District of California

services using the MOVA Contour program." ECF No. 114 at 4. The plain terms of the contract forbade DD3 from using MOVA. The contract reads in relevant part, "Digital Domain represents and warrants that the Deliverables and the Work shall in no way include any MOVA Technology… Digital Domain represents and warrants that any employees involved with MOVA Technology (including without limitation Greg LaSalle and Ken Pearce)." ECF No. 41-3 at ¶ 16(f)–(g). Violation of either of those provisions gave Disney the right to "immediately terminate this Agreement." *Id.* The contract further gave Disney a right of indemnification for any breach of DD3's representations or warranties on this subject. *Id.* ¶ 17(a).

These provisions do not make Rearden's allegations implausible. As Rearden argues, "Vicarious infringement requires only that Defendants had the legal right and the practical ability to limit or stop the infringement, and had a direct financial interest in the infringing activity." ECF No. 115 at 7. The provisions in question not only give Disney the legal *right* to stop any infringement, they provide a powerful *incentive* to do so.

Disney also argues that the contractual language supports its argument that "without the allegation in Paragraph 120, Rearden is basing vicarious liability on looking for 'a needle in a haystack.'" ECF No. 118 at 10 (quoting *Rearden II*, 152 F.4th at 1072; *VHT,* 918 F.3d at 730). For two reasons, the argument is not persuasive. First, the allegations contained in paragraph 120 included that Disney contracted with DD3 for facial performance, that Disney contracted with DD3 for output works using MOVA, and that Disney had the ability to supervise and control DD3's performance. Dkt. No. 90 ¶ 120. The Mary Lou Agreement draws into question the allegation about outputs using MOVA, but not the other allegations. Second, the comparison to the "haystack" in *VHT* is misplaced here. In *VHT*, the defendants' "haystack" consisted of copyrighted photos uploaded to Zillow by members of the public to market homes. 918 F.3d at 730. The allegations here are more discrete. Rearden alleges that DD3 was required to submit its work in progress to Disney on at least a weekly basis, ECF No. 90 ¶ 125, which implies a significantly more limited body of material. In any event, the Ninth Circuit has already rejected Disney's "haystack" argument on very similar facts, *Rearden II*, 152 F.4th at 1069, and the Court sees no reason to depart from that ruling here.

United States District Court
Northern District of California

## V.   CONCLUSION

For the foregoing reasons, the Court denies Disney's motion for reconsideration.  ECF No. 114.

**IT IS SO ORDERED.**

Dated:  March 4, 2026



_____
JON S. TIGAR
United States District Judge